## HALVERSON v. UNITED STATES.
### No. 7453.

Circuit Court of Appeals, Seventh Circuit.
June 25, 1941.

Rehearing Denied Aug. 4, 1941.

Frank A. McCarthy and John E. Toomey, both of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., of Chicago, Ill., Julius C. Martin, Asst. Atty. Gen., and Fendall Marbury, of Washington, D.C., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal from a judgment in favor of the Government in a suit on a policy of war risk insurance presents two questions: (1) Whether the facts show that the insured obtained reinstatement of his policy by fraudulent misrepresentation; and (2) whether the Government is estopped from setting up that fraud as a defense to the suit, having collected premiums for some years after it received notice of the facts upon which the defense is based. The case was tried to the court without a jury, and the court found that the insured was guilty of fraud in procuring the policy sued on, and that the policy was, therefore, void; and that the Government was not estopped to set up the defense of fraud.

The policy involved was lapsed for non-payment of premium in July, 1919. March

11, 1931, the veteran made application for its reinstatement for the full amount of $10,000. He was examined by a medical examiner at Hines Hospital who recommended acceptance of the risk as a first-class one. In the applicant's own statement to the medical examiner, the following questions and answers appear:

"25. Are you now in good health? Yes.

"26. Have you ever been treated for any disease of * * * kidney or bladder No, genito-urinary organs No * * *

"27. Have you ever been ill, or contracted any disease, or suffered any injury, or been prevented by reason of ill health from attending your usual occupation, or consulted a physician in regard to your health, since date of discharge? (Answer 'Yes' or 'No') No. If so, give dates and full particulars, including the name and address of physician."

Relying upon the answers of the insured as to his health and freedom from disease and the absence of medical consultation, as well as upon its own examination, the Government reinstated the policy as of March 1, 1931. Thereafter the insured dropped two other policies in private companies which he was then carrying, totalling $4,500.

In December, 1932, the veteran was examined at Hines Hospital and given deep X-ray treatments for hematuria. He stated then that he had noted the condition three years earlier. The examining physician testified that he found at that time that he had a cancer of the bladder. In February, 1933, the veteran made application for compensation for disability claimed to be due to disease of the genito-urinary organs dating back to February, 1920. In this application he listed the names of three physicians who had treated him for kidney trouble or "G. U." in 1920, 1930, and from February 2, 1931. In connection with this application he stated that he had first passed blood in 1929. In 1937, he made claim for benefits under his insurance policy for total permanent disability said to be caused by recurrent carcinoma of the bladder, again listing the three physicians who treated him in 1920, 1930, and 1931–32. His application was dated May 13, 1937, but the record does not show when it was received. The insured died May 28, 1937, of carcinoma of the bladder with hydronephrosis and broncho-pneumonia. Appellant then filed claim for death benefits under the policy. July 6, 1937, she was notified of the disallowance of her claim on the ground that the policy had been fraudulently reinstated. Premiums paid after reinstatement have not been tendered back.

The evidence showed that Halverson was a rather active man who worked regularly for a company selling investment securities until 1932 when he went to work for a coal company. He was in the accounting department of the investment company, doing inside work at first, and later he went out on the street, selling. Two office associates testified that he appeared to be in good health, working every day, and playing golf frequently. They did, however, recall that he complained of his bladder, and of blood in the urine prior to 1931.

Two of the physicians whose names had been furnished in the application of the insured for compensation in 1933, testified. One stated that according to his records, he had examined him in 1920 at his home, diagnosing his complaint as "guarded cystitis, acute inflammation of the bladder." He had talked to him again in 1930 when he was in his home for the purpose of attending Mrs. Halverson. At that time he made no diagnosis of the insured, although he stated that he suspected then that he had some form of bleeding from the bladder and advised him to have a cystoscopic examination. The second physician testified that Halverson made an appointment and came to his office for an examination, complaining of backache and blood in the urine. By means of a cystoscopic examination he found a small wart-like growth on the posterior wall of the bladder which the physician advised having removed by cautery. The growth was not then malignant. Halverson did not return for the cauterization as advised. He appears never to have had any treatments for his condition until those of December, 1932.

Appellant testified that the first so-called examination, in 1920, was not really an examination at all, that the parties were just making conversation, "just kidding," that Halverson had never consulted this doctor, and that he had been in excellent health. The first time she learned that there was anything troubling him was when he mentioned it to the doctor in 1930. She knew of his going for the examination in response to the advice of the first physician, but said that as a result of that examination he was reassured, "it seemed to eliminate that uneasiness," and after that he

never appeared worried, and seemed to forget it entirely until December, 1932.

By this testimony appellant sought to prove that there was no misrepresentation as alleged by the Government; that such relations as her husband had with physicians prior to reinstatement of the policy did not constitute consultation and treatment by them within the meaning of the policy; that in fact her husband had not been in ill health nor suffered from any disease nor had he been treated by a physician prior to reinstatement of the policy.

 It has been held that casual questioning and superficial examination by a physician for slight, or temporary ailments do not constitute attendance by or consultation with a physician within the meaning of the usual policy provision. See 4 Couch on Insurance §§ 889, 885h at p. 2990; Annotations 63 A.L.R. 855; 131 A.L.R. 617. If the medical attendance here disclosed were of no more than that character, appellant might well contend that it was not within the terms of the policy, and that failure of the insured to disclose it was not a willful and intentional misrepresentation. However, we are convinced that the evidence of medical consultation was sufficient to justify the court's finding of fraud. The insured was sufficiently worried about his condition to discuss it more or less casually with the family physician twice, and then to make an appointment for an examination to ascertain the cause of the condition troubling him. This was no routine examination such as many persons submit to periodically. That the result of that examination was reassuring to him did not justify his unequivocal denial of any consultation. Cf. Perkins v. Prudential Ins. Co., 7 Cir., 69 F.2d 218. His clear recollection of all the consultations later when he desired to use them to support his claim for compensation negatives the idea of mere forgetfulness.

 Appellant further contends that even though the policy were fraudulently reinstated, which she does not concede, under the facts here shown, the Government is equitably estopped from setting up the fraud as a defense, by acceptance of premiums long after the facts of his condition became known upon his application for compensation. She urges that if the Government intended to rely on the alleged fraud in the reinstatement, it should have rescinded the policy as soon as the facts

became known to it, which was in December, 1932, when Halverson went to Hines Hospital for treatment, and during the course of the examination disclosed the fact of his consultation with the two physicians. She also contends that by failing to respond to her affirmative reply setting up notice of the facts, appellee admitted the truth of her pleading and could not thereafter deny that it had notice as early as February, 1933, of the facts relied upon for cancellation, and by continuing to accept premiums it waived the right to cancel. We do not agree with appellant that her reply required a responsive pleading, hence we hold that appellee did not waive its right to deny knowledge of the facts relied upon for rescission.

Appellee introduced evidence showing the mode of procedure followed in the Veterans' Administration, and that the department handling insurance claims was entirely separate and distinct from that handling compensation and pensions, and tending to show that there was no attempt to correlate the activities and records of the two. It would follow from this that facts regarding the illness and disability of a veteran known to one department would not be known to the other. The application for insurance benefits was not made out until a short time before Halverson's death, and the date of its receipt by the Insurance Division is not shown.

 It has been held, and we think rightly, that "the officers of the Veterans' Administration were not required to search the records of another department of the Government for the purpose of ascertaining whether the representations made in the application were true or false." United States v. Depew, 10 Cir., 100 F.2d 725, 728, citing United States v. Riggins, 9 Cir., 65 F.2d 750. Both of these cases involved concealment of facts in applications for reinstatement of policies, which facts were already of record in the Administration. We think the same thing is true of facts coming to the knowledge of different departments subsequent to the application for reinstatement. Hence, although it was known to the Compensation Division of the Administration at all times after December, 1932, that Halverson was not in fact in good health at the time of the reinstatement of his policy, and had consulted physicians to ascertain the cause of the condition of which he complained, that fact may not be used to estop the Insurance Division from

cancelling the policy. See, also, Raives v. Raives, 2 Cir., 54 F.2d 267.

No question is raised in this case of the right of the Government to retain insurance premiums paid after reinstatement of the policy. We have discussed this question in Ray v. United States, 7 Cir., 121 F.2d 416, decided June 25, 1941.

Judgment affirmed.