UNITED STATES v. KELLEY.

No. 10027.

Circuit Court of Appeals, Ninth Circuit.

June 28, 1943.

Motion to Amend Opinion Denied

Sept. 7, 1943.

824

Francis M. Shea, Asst. Atty. Gen., Lester P. Schoene, Director, Bureau of War Risk Litigation, and Wilbur C. Pickett and Fendall Marbury, Attys., Department of Justice, all of Washington, D. C., Leo V. Silverstein and Charles H. Carr, U. S. Attys., and Daniel Dillon, Atty., Department of Justice, all of Los Angeles, Cal., and Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., for appellant.

Sylvester Hoffmann, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Upon his application dated March 15, 1932, Government life insurance of $5,000 (policy No. K-919427) was granted to Thomas Joseph Kelley under § 310 of the World War Veterans' Act, 1924, as amended, 38 U.S.C.A. § 512a. Appellee, Kelley's wife, was named as beneficiary. Kelley died on August 10, 1935. Appellee claimed insurance under the policy. The Administrator of Veterans' Affairs denied the claim. Appellee brought an action on the claim against appellant, the United States, under § 19 of the Act, as amended, 38 U.S.C.A. § 445. Appellant defended on the ground that the policy was obtained by fraud. There was a jury trial. At the close of all the evidence, appellant moved for a directed verdict. The motion was denied. The jury's verdict was for appellee. Appellant moved for judgment notwithstanding the verdict. The motion was denied, and judgment was entered for ap-

pellee. From that judgment this appeal is prosecuted.

Appellant specifies as error the denial of its motion for a directed verdict and its motion for judgment notwithstanding the verdict. The ground of each motion was, in substance, that the evidence required a finding that the policy was obtained by fraudulent misrepresentations in the application therefor. The application (put in evidence by appellant) was on a printed form. It consisted, in part, of questions and answers. The questions were printed, being part of the form. The answers were written or typed in spaces left for that purpose. The pertinent questions and answers were as follows:

"13. Have you ever applied for (a) Government compensation *No?* * * * (d) Pension *No?* * * *

"21. What operations have you had? Describe fully, giving dates, also name and address of attending surgeon. *Hemorrhoidectomy Sept. 1920—Complete Recovery Dr. Guy Cochran Los Angeles* * * *

"25. Are you now in good health? *Yes*

"26. Have you ever been treated for any disease of * * * heart or blood vessels *No,* * * * genito-urinary organs *No,* * * *

"27. Have you been ill, or contracted any disease, * * * or consulted a physician in regard to your health, since date of discharge?[1] (Answer 'Yes' or 'No.') *Yes* If so, give dates and full particulars, including the name and address of physician. *Hemorrhoidectomy Sept. 1920—No other trouble—see above* * * *

"40. Has applicant [Kelley] ever had syphilis * * * or rheumatism? (State which). *No*"[2]

Appellant characterized the foregoing answers as fraudulent misrepresentations. Its contention was and is that the evidence

required a finding that the answers were false, were made in reference to material facts, were made with knowledge of their falsity, were made with intent to deceive and be acted upon, and were in fact relied upon and acted upon by appellant.[3]

By his answer to question 13(a), Kelley represented that he had not applied for "Government compensation." There was no evidence that he had applied for "Government compensation," eo nomine. The evidence showed that he had applied on August 31, 1931, for "compensation of veteran disabled in the World War." That application (put in evidence by appellant) said nothing about "Government compensation." Kelley may or may not have understood or believed that the compensation he applied for was "Government compensation," within the meaning of question 13 (a). There was no evidence which required a finding that he did so understand or believe. Therefore the evidence did not require a finding that the answer to question 13(a) was made with knowledge of its falsity or with intent to deceive.

The evidence showed that both of Kelley's applications—his application for compensation and his application for insurance—were made to and acted upon by the Veterans' Administration. With respect to such applications, the Veterans' Administration was and is the agent of appellant. United States v. Golden, 10 Cir., 34 F.2d 367, 376. The evidence showed that, as such agent, the Veterans' Administration received, considered and acted upon Kelley's application for compensation before receiving his application for insurance. Thus the evidence showed that appellant, by its agent, had full knowledge of the application for compensation and, with such knowledge, granted the insurance. Therefore the evidence did not warrant, much less require, a finding that appellant relied upon or was deceived by the answer to question 13(a).

---

[1] January 16, 1919.

[2] Questions 13, 21, 25, 26 and 27 were answered by Kelley. Question 40 was answered by a medical examiner, Dr. Walter Lenker, who died before the trial.

[3] Appellant's brief states: "The elements of the defense of fraud in such a case as the present one are disclosed in numerous decisions to be these: (1) A false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with the intent to deceive and be acted upon, (5)

when action has been taken in reliance upon the representation." Citing Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76; Cooper v. Schlesinger, 111 U.S. 148, 4 S.Ct. 360, 28 L.Ed. 382; Lehigh Zinc & Iron Co. v. Bamford, 150 U.S. 665, 14 S.Ct. 219, 137 L.Ed. 1215; Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; Hindman v. First National Bank, 6 Cir., 112 F. 931; United States v. Depew, 10 Cir., 100 F.2d 725.

■ There is here no question of imputing to the Veterans' Administration knowledge which it might have been able to obtain from the records of another Department of the Government. Kelley's application for compensation was a part of the Administration's own records. Its knowledge thereof was actual, not imputed, knowledge. Hence such cases as United States v. Riggins, 9 Cir., 65 F.2d 750; United States v. Depew, 10 Cir., 100 F.2d 725; and Jones v. United States, 5 Cir., 106 F.2d 888, cited by appellant, have no relevancy here.

■ Appellant argues that Kelley's application for insurance was considered and acted upon by the "insurance section" of the Veterans' Administration; that the "insurance section" had no knowledge of Kelley's application for compensation; and that therefore appellant could disclaim such knowledge. Cf. Halverson v. United States, 7 Cir., 121 F.2d 420, 422. The argument assumes that the "insurance section" and the Veterans' Administration are separate entities, and that, with respect to Kelley's application for insurance, the "insurance section" was appellant's agent. These assumptions are unwarranted. The "insurance section" of the Veterans' Administration is not a separate entity, but is merely a function or activity of the Administration. Appellant's agent was not the "insurance section" of the Administration, but was the Administration itself.

■ Furthermore, the evidence, instead of proving that the "insurance section" had no knowledge of Kelley's application for compensation, tended to prove that it had such knowledge. The evidence showed that identifying numbers (called C numbers) were assigned to applications for compensation; that the C number assigned to Kelley's application for compensation was C-1783258; and that that same C number was endorsed on Kelley's application for insurance. There was evidence that the endorsement was put on the application for insurance prior to its approval by the "insurance section." From this the jury could reasonably infer that the "insurance section" had knowledge of the application for compensation.

By his answer to question 13.(d), Kelley represented that he had not applied for a pension. There was no evidence that this representation was false.

By his answer to question 21, Kelley represented that he had had a hemorrhoidectomy in September, 1920; that he had completely recovered therefrom; that Dr. Guy Cochran of Los Angeles was the surgeon who performed that operation; and that he (Kelley) had had no other operation. There was no evidence that these representations were false.

■ By his answer to question 25, Kelley represented that he was in good health on March 15, 1932.[4] There was evidence which tended to show that this representation was false. There was evidence which tended to show that it was true. Whether it was true or false was for the jury, not the court, to decide.

By his answer to question 26, Kelley represented that he had not been treated for any disease of the heart or blood vessels or genito-urinary organs. There was no evidence that this representation was false.

■ By his answer to question 27, Kelley, in effect, repeated the representation made in his answer to question 21 and further represented that, except as indicated in his answer to question 21, he had not been ill or contracted any disease or consulted a physician in regard to his health between January 16, 1919,[5] and March 15, 1932.[6] There was no evidence that these representations were false.

The evidence showed that, with his application for compensation, Kelley submitted to the Veterans' Administration an application for disability allowance under § 200 of the World War Veterans' Act, 1924, as amended, 38 U.S.C.A. § 471. Both applications were dated August 31, 1931. Each stated that Kelley had heart trouble, spine trouble and rheumatism, but neither stated how mild or severe these ailments were. Neither stated that Kelley had been ill or had consulted a physician in regard to his health since January 16, 1919. Neither stated that he had contracted heart trouble, spine trouble, rheumatism or any other disease since January 16, 1919. Instead, his application for compensation stated that his disability began in 1918. Hence Kelley's answer to question 27 was not, we think, inconsistent with the statements in his application for compensation and his application for disability allowance; but even if there was an inconsistency, it does not follow that the answer was false. The statements may have been false in-

---

[4] The date of his application for insurance.

[5] The date of his discharge.
[6] The date of his application for insurance.

stead. If not wilfully false, they may have been erroneous. The conflict, if any, was for the jury, not the court, to resolve.

■ The evidence showed that on October 28, 1931, after his application for compensation and his application for disability allowance were received, Kelley was examined by medical examiners of the Veterans' Administration—Dr. Louis L. Burstein, Dr. John Carling and Dr. D. C. McCulloch. The examiners' report (put in evidence by appellant) showed the following diagnosis: "Aortitis, chronic, mild, with good cardiac tolerance." The examiners did not find that Kelley was ill or had been ill, or that he had any disease other than aortitis, or that he had contracted aortitis or any other disease since January 16, 1919. On November 17, 1931, the Veterans' Administration notified Kelley:

"Your claim for disability allowance under Section 200, World War Veterans Act, 1924, as amended, has been considered by the Rating Board of this office. Your disability, aortitis, chronic, mild, is rated less than permanent partial 25%. In order to be eligible for disability allowance, a rating of permanent partial 25% or more is necessary. Your claim for disability allowance, accordingly has been disallowed. Your claim for disability compensation was also considered under date of November 13, 1931, and it is the decision of the Board that your disability, aortitis, chronic, was not incurred in or aggravated by your service.[7] A compensable disability must have been incurred in or aggravated by service and exist to a degree of ten percent or more. It was, therefore, necessary to disallow your claim for disability compensation."

Thus, in effect, Kelley was told by the Veterans' Administration that he did not have any of the ailments mentioned in his application for compensation and his application for disability allowance; that his only ailment was a mild aortitis; and that his resulting disability was "less than permanent partial 25%." Kelley may have believed what the Administration told him. He may also have believed that he would recover from the mild aortitis which the Administration said was his only ailment; and when (some four months later) he applied for insurance, he may have believed that he had recovered. Whether he did or did not so believe was for the jury, not the court, to say.

The answer to question 40 was not made by Kelley, but was made by Dr. Lenker.[8] It was not signed by Kelley, nor, so far as the record shows, was it based on information obtained from Kelley. There was no evidence that Kelley saw it or knew anything about it. By this answer, Dr. Lenker expressed his opinion that Kelley had not had syphilis or rheumatism. There was no conclusive evidence that Dr. Lenker's opinion was wrong. There was no evidence whatever that he knew it was wrong.

The motion for a directed verdict and the motion for judgment notwithstanding the verdict were properly denied.

Judgment affirmed.

### On Motion to Amend.

PER CURIAM.

Appellant's motion to amend the opinion rendered by this Court in the above entitled cause is herewith ordered denied.

DENMAN, Circuit Judge, concurring.

The appellant moves a modification of the opinion's holding that the Veterans Administration had notice of the filing of a claim for compensation by the appellee. Appellant urges that it cannot be charged with such notice because of the administrative difficulty in examining its files in the compensation section to determine whether the applicant had correctly answered question 13(a).

There should be no such administrative difficulty if the files are properly kept. If they are not, such failure should not prejudice the veteran's widow any more than it would prejudice a widow suing the Equitable Life Insurance Company with a vastly greater volume of life insurance and compensation business than that of the Veterans Administration. If properly indexed it would not take an hour's search of the files to determine whether a compensation claim had been filed. One can imagine the short shrift we would give to a similar plea of the Equitable Life if the question had been whether the insured under a life policy had filed with that company a claim for compensation under an agreement with the company for compensation for total permanent disability.

[7] The Administration appears to have believed that Kelley's aortitis was "incurred" before he entered the service— that is to say, before September 19, 1917.

[8] See footnote 2.