**CLOHESY v. UNITED STATES.**

No. 10589.

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1952.

Irving E. Hollobow, Laurence C. Warren, Lawrence J. Taslitz, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., C. Wylie Allen, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment rendered in favor of the defendant, the United States Government, in an action brought by Evelyn A. Clohesy as the principal beneficiary under a National Service Life Insurance policy on the life of her deceased husband, John C. Clohesy.

The case was submitted to the District Court on an agreed statement of facts which, in its essential particulars, is as follows:

John C. Clohesy, the insured, while in the military service of the United States during World War II, was issued a National Service Life Insurance policy in the amount of $10,000. Evelyn A. Clohesy, the plaintiff in this action, was designated the principal beneficiary. The insured was discharged from the military service in 1945, and the insurance thereafter lapsed for non-payment of premiums. In July of 1947 the policy was reinstated but it again lapsed for non-payment of the premium due the following month. On December 20, 1947, the insured again applied for reinstatement of the policy. In this application in response to the question, "Are you now in as good health as you were on the due date of the premium in default," he answered, "Yes." He answered, "No," to the question as to whether, since the lapse of the insurance, he had been ill or suffered or contracted any disease or infirmity or been prevented from attending his usual occupation or consulted a physician. Relying upon the truth of these statements, the Veterans Administration, on January 27, 1948, approved the request for reinstatement. The fact was, however, that on December 19, 1947, the day before the insured last applied for reinstatement of his policy he had suffered an acute heart attack and had consulted a physician.

On March 11, 1948, the insured filed in the Chicago Regional Office of the Veterans Administration an application for compensation in which he stated his disability to be "Acute coronary occlusion began December 19, 1947." He further stated that he had been treated by Robert L. Ladd, M. D., from December 19, 1947. A statement by Dr. Ladd was submitted, which read: "This is to certify that Mr. John Clohesy * * * has been under my care since December 19, 1947, for treatment of an acute coronary occlusion. It is my opinion that he will be disabled for an indefinite period of time." This application was disapproved for the reason that the disability alleged was not shown to have been incurred in or aggravated by service.

On May 22, 1948, by letter addressed to the Insurance Service, District Office No. 7, Chicago, Illinois, the insured inquired of the Veterans Administration concerning the possibility of his obtaining any total disability benefits under his National Service Life Insurance. In this letter he stated that, "On December 19, 1947, I had a Heart Attack was totally disabled for ten weeks. Then on April 27–48 had another attack, and have been disabled ever since." He further indicated that he had applied for compensation, and gave the claim number. In reply to this letter he was advised that total disability income under National Service Life Insurance might be secured in proper cases upon application therefor and payment of an extra premium for such protection.

The insured died of coronary occlusion on January 13, 1949. Premiums on the policy had been paid regularly from the date of the last application for reinstatement. Plaintiff thereupon filed a claim for National Service Life Insurance as the principal beneficiary under the policy. With the claim she enclosed this statement by Dr. Ladd: "I have been acquainted with John Clohesy for the past twenty years * * * December 19, 1947, he suffered an acute coronary occlusion for which he was hospitalized for several weeks. He was under strict medical management until his death, January 13, 1949." The Medical Certificate of Death was signed by Robert L. Ladd, M. D.

In February 1949, the month following the death of the insured, his compensation folder, which had been maintained in the Regional Office of the Veterans Administration, was transferred to Branch Office No. 7 of the Veterans Administration for consolidation with his insurance file. The

Veterans Administration then decided, in considering plaintiff's claim, that on the basis of the veteran's statement of comparative health in his request for reinstatement, the subsequent statements of his physician and his own later statements, the insurance was reinstated in reliance upon the insured's fraudulent representations; and that had his true physical condition been disclosed at the time, the request for reinstatement would not have been approved. The reinstatement of the policy was therefore cancelled, and the plaintiff's claim for the insurance was disallowed.

Plaintiff thereupon filed an action in the District Court to recover on the policy. The United States denied liability, alleging that the insured had procured the approval of his last application for reinstatement by fraudulent representations in his application for reinstatement. Upon submission to the court the facts were stipulated and judgment was rendered for the defendant.

Congress has provided, 38 U.S.C.A. § 802(w), that National Service Life Insurance policies may be contested on the ground of fraud. Plaintiff does not, as she obviously cannot, deny that the insured committed fraud in this application for reinstatement. However, it is here contended that the fraud was vitiated by a subsequent full disclosure of his physical condition, made when the insured filed a claim with the Veterans Administration for disability compensation; that with notice of the material facts relating to the insured's physical condition, the Government elected to continue the policy and cannot now cancel the reinstatement.

As appears from the agreed statement of facts, prior to the insured's death his compensation folder and his insurance file were maintained in separate offices or divisions of the Veterans Administration. It is thus plaintiff's contention that although employees of the Veterans Administration in charge of the compensation folder were in no way concerned with and had no knowledge of the insured's application for reinstatement, nevertheless their knowledge of his true physical condition constituted notice to the Veterans Admin-

istration of false representations in that application.

In urging this proposition, the plaintiff relies heavily on United States v. Kelley, 9 Cir., 136 F.2d 823, 825. In that case the Compensation Section of the Veterans Administration had received and acted upon an application from the insured for "compensation of veteran disabled in the World War." When the insured subsequently applied to the Insurance Section for Government life insurance, he answered, "No," to the question of whether he had ever applied for "Government compensation." The jury did not find that this answer was made with knowledge of its falsity or with intent to deceive, and the Court of Appeals held that the evidence did not require a finding that it was so made. Continuing, however, the court there said that the Insurance Section of the Veterans Administration was not a "separate entity" but was "merely a function or activity of the Administration", and that an application for compensation "was a part of the Administration's own records. Its knowledge thereof was actual not imputed." We do not believe that this language of the court in that case should be given the broad application for which the plaintiff here contends. There it was shown that all applications by veterans for compensation were identified by a "C" number and that the veteran's application for insurance in that case, at the time it was approved by the Insurance Section, bore his "C" number, thus showing to the person or persons passing on the application that the veteran had then made an application for Government compensation. On the particular facts of that case we agree that there the knowledge, not only of the Veterans Administration but of the Insurance Section of that department, could be properly said to be "actual, not imputed". Under those circumstances we think the court properly held that the Government could not claim that fraud of the insured caused the approval of the insurance application.

Halverson v. United States, 7 Cir., 121 F.2d 420, 422, involved facts very similar to the facts in the instant case. There a veteran applied in 1931 to the Insurance

Division of the Veterans Administration for reinstatement of a war risk insurance policy which had lapsed for non-payment of premiums. He answered falsely questions in the application concerning the state of his health and his medical history. Subsequently he applied to the Compensation Division requesting compensation for disability attributed to diseases dating back to 1920, and listed the names of three physicians who had treated him at various times since 1920. Upon the death of the insured in 1937 payment of the policy was refused on the ground that the insurance had been reinstated upon the veteran's fraudulent representations. There also the beneficiary contended that even though reinstatement of the policy had been secured by fraud the Government was estopped from setting up the fraud as a defense by acceptance of premiums long after the true condition of the insured became known from his application for compensation. This court held that the Government was not so estopped to assert the defense of fraud. It there appeared that the Insurance Division was entirely separate and distinct from the division handling compensation and that there was no correlation of the records of the two. Judge Sparks, speaking for the court, said:

"* * * although it was known to the Compensation Division of the Administration at all times after December, 1932, that Halverson was not in fact in good health at the time of the reinstatement of his policy, and had consulted physicians to ascertain the cause of the condition of which he complained, that fact may not be used to estop the Insurance Division from cancelling the policy."

We think the pronouncement of this court in the Halverson case was correct and clearly disposes of the case at bar. Here the insured deliberately gave false answers to clear and simple questions, answers upon which the Insurance Section of the Veterans Administration was entitled to rely without further inquiry and without a search of the records of other sections of the Veterans Administration. If the true condition of the health of the insured had been known to the person passing on the application for reinstatement, of course, the policy would not have been reinstated. If, as plaintiff contends, the insured was misled by the fact that the Veterans Administration continued to accept premiums on the policy to the time of his death, he could have been misled only into thinking that, up to that time, his conscious, deliberate deception had succeeded. The plaintiff, who stands in the position of the insured, cannot escape the consequences of the insured's deliberate untruths by insisting that the Veterans Administration was chargeable with knowledge that information relating to the request for reinstatement was false, simply because certain of its employees concerned with an altogether different function of the Administration later came into possession of the true facts in connection with the claim of the insured for compensation.

The plaintiff says that this court, in United States v. First National Bank of Chicago, 7 Cir., 138 F.2d 681, 685, apparently reversed its holding in the Halverson case and, citing the Kelley case, held that "notice to one section of the Veterans Administration is notice to the entire organization." On the contrary, in that case this court expressly said that the Halverson case was distinguishable on its facts and, therefore, not controlling. In the First National Bank case the Government tried to collect from the defendant bank, as endorser guaranteeing former endorsements, for certain pension checks which had been issued by the Pension Bureau to the pensioner after his death and had been then cashed by some person, or persons, forging the payee's endorsement. In that case the Veterans Bureau had been notified of the veteran's death and had paid his funeral expenses but failed to notify the Pension Bureau, which continued to issue and mail the pension checks. The defendant bank had taken these checks as innocent holder for value. This court held that it was negligence on the part of the employees in the Veterans Bureau, on learning of the death of the pensioner, not to notify the Pension Bureau, and that the Government, in issuing commercial paper—the pension

checks, was liable for the negligence of its employees; and that the Pension Bureau must be held to know what the Veterans Bureau was under a duty to communicate to it.

One more question remains for consideration in this case. It appears from the agreed statement of facts that the insured, on May 22, 1948, addressed a letter to "Insurance Service, District Office No. 7, Chicago, Illinois," inquiring about total disability benefits under his National Service Life Insurance, and stating that, "On December 19, 1947, I had a Heart Attack * * *," and that he had filed a claim for compensation. The agreed statement of facts also stated that, "In reply under date of June 2, 1948, he was advised concerning National Service Life Insurance and particularly Total Disability Income which might be secured in proper cases upon application therefor, and payment of an extra premium for such protection."

The agreed statement of facts does not tell us who answered this letter of the insured or the department or section of the Veterans Administration to which the person answering this letter belonged. We have no information as to whether at the time this answer to the insured's letter was written the insured's insurance file was in the office to which the insured's letter was addressed. The agreed statement does tell us that on February 4, 1949, after the death of the insured, the compensation folder of the insured maintained in the Regional Office of the Veterans Administration was transferred to Branch Office No. 7 of the Veterans Administration for consolidation with his insurance file. The agreed statement of facts fails to show that Branch Office No. 7 of the Veterans Administration was the same as "Insurance Service, District Office No. 7, Chicago, Illinois."

We think the facts revealed by the agreed statement of facts are insufficient to require a finding by the trial court that the Insurance Department of the Veterans Administration as well as the Compensation Department knew the true facts as to the health of the insured prior to his death. The agreed statement shows that the con-

solidation of the insured's compensation file and insurance file did not take place until after his death.

Apparently the plaintiff realized that the agreed statement of facts did not show that the Insurance Section had actual knowledge of the fraud of the insured prior to his death. In her principal brief and in her reply brief she insisted that notice of the true facts to the Veterans Administration was sufficient; and that all sections and divisions of the Veterans Administration were bound by any information in the combined records of the Administration. With this contention we cannot agree.

The judgment is affirmed.