## DOLLINGER v. UNITED STATES.
### No. 50 C 1193.

United States District Court
N. D. Illinois, E. D.
Jan. 21, 1954.

Francis Heisler, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for the Government.

CAMPBELL, District Judge.

Plaintiff brings this suit to recover the proceeds of a National Service Life Insurance policy issued to Paul Dollinger, her deceased husband. The government defends, as it may, on the ground that Dollinger committed an act of fraud when he applied for reinstatement of his policy. 38 U.S.C.A. § 802(w).

Most of the relevant facts are not disputed. Dollinger was inducted into the Army of the United States on April 2, 1941, and, except for a short time spent on inactive duty, served continuously until his honorable discharge on February 17, 1944. During that period of service, a National Service Life Insurance policy, Certificate Number N–14660236, was issued to him, effective November 12, 1943. Dollinger paid the monthly premiums on that policy until April, 1944; he failed to pay the premium due that month, and the policy lapsed one month thereafter, on May 13, 1944. On September 9, 1946, Dollinger executed an application for reinstatement of the insurance. The application was accepted by the Veterans Administration, the requested reinstatement was effected, and premiums were paid by Dollinger until his death on March 25, 1948.

In the application for reinstatement of the insurance, Dollinger was asked: "Are you now in as good health as you were on the due date of the first premium in default?" He answered "Yes." Dollinger was next asked: "Have you been ill or suffered or contracted any disease, injury or infirmity, or been prevented by reason of ill health from attending to your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health, since lapse of this insurance?" He answered "No." The government has submitted a mass of evidence to show that these answers were false.

The evidence adduced at the trial establishes that Dollinger visited one Dr. Alvin M. Shapiro, whose name is now Alvin M. Sims, as early as July 10, 1944. Dollinger complained of a condition described by Dr. Shapiro as "bloody rectal stools." He had made similar complaints to physicians in the army: the condition was not new. Dr. Shapiro advised Dollinger to submit to a physical examination at a Veterans Administration hospital. On April 20, 1945, Dollinger visited Dr. Shapiro again, and reported a recurrence of "bloody stools." Dollinger had not yet been examined at a Veterans Administration hospital, and Dr. Shapiro advised such an examination at an early date. On September 3, and again on September 4, 1946, five days before the execution of the application for reinstate-

ment of his insurance, Dollinger visited Dr. Jacob Brodsky, complained of the same rectal condition, and was advised by Dr. Brodsky to report to a hospital for an X-ray examination. Dr. Shapiro and Dr. Brodsky each suspected that Dollinger suffered from a malignant growth in his intestinal tract, but neither doctor communicated his suspicions to Dollinger. Shortly after his visit with Dr. Brodsky, Dollinger was hospitalized. He died on March 25, 1948. The immediate cause of death was a "circulatory failure," but there is no doubt that Dollinger's prolonged illness and death was caused by a cancerous intestinal tract.

Arguably, Dollinger may have believed that he was in as good health on September 9, 1946, as he was in April 1944, for there is some evidence which indicates that he had the same symptoms of malignancy—"bloody rectal stools"—in 1944 and 1946. In any event, a determination of the truth or falsity of Dollinger's answer to the first question depends completely upon a finding as to his state of mind on September 9, 1946. This type of subjective inquiry is unnecessary, since it is apparent that Dollinger's answer to the second question was utterly false. That question asked Dollinger to state whether or not he had been ill since his insurance lapsed—his answer was "No." The question asked whether he had consulted a physician since the insurance lapsed—his answer was "No." In these respects, the evidence demonstrates beyond doubt that the answer was false; and in other respects, if findings as to the truth or falsity of the second answer were necessary, the findings would certainly be adverse to plaintiff. For example, the second question asked whether Dollinger had been prevented by reason of ill health from attending to his usual occupation, and there is evidence in this record to indicate that the answer should have been "Yes." This court therefore finds that the answer to the second question contained in the application for reinstatement of insurance was false. Further, the court finds that Dollinger knew that his answer was

false. This latter finding is not based upon Dollinger's alleged mistaken view of his own health; for, as plaintiff urges, Dollinger may not have known that he was seriously ill. Rather, the finding is based upon Dollinger's mis-statement of his own acts since the lapse of his insurance. He may not have known that he was seriously ill, but he certainly knew that he visited a physician.

On the basis of the foregoing facts, this court concludes as a matter of law that Dollinger committed an act of fraud when he executed the application for reinstatement of his insurance in 1946, and that plaintiff may not recover the insurance proceeds. Clohesy v. United States, 7 Cir., 1952, 199 F.2d 475. Accordingly, judgment is entered in favor of the United States, and the cause is dismissed at plaintiff's costs.