**UNITED STATES of America,**
**Appellant,**

v.

**Helen McCarthy WILLOUGHBY,**
**Appellee.**

**No. 15504.**

United States Court of Appeals
Ninth Circuit.

Dec. 2, 1957.

525

George C. Doub, Asst. Atty. Gen., Melvin Richter, Seymour Farber, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for appellant.

Adolph Feierbach, Visalia, Cal., for appellee.

Before BONE, LEMMON and BARNES, Circuit Judges.

LEMMON, Circuit Judge.

"Men," said Mr. Associate Justice Holmes, "must turn square corners when they deal with the government." [1]

In the instant case, the insured, when dealing with the Government, constructed a labyrinth of falsehoods and evasions that would hamper any administrative Theseus seeking the Minotaur of truth.

**1. *Statement of the Case and of the Facts***

This action was brought by the appellee to recover benefits, as primary

1. Rock Island, Arkansas, & Louisiana Railroad Company v. United States, 1920, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188, quoted with approval in Federal Crop Insurance Corporation v. Merrill, 1947, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10.

2. "(w) Subject to the provisions of section 812 of this title, all contracts or

beneficiary, under her deceased son's National Service Life Insurance policy. The appellant defended under 38 U.S.C.A. § 802(w),[2] on the ground that reinstatements of the policy had been obtained by fraudulent misrepresentations of the insured.

On November 21, 1956, the District Court, sitting without a jury, entered judgment for the appellee, and the appellant filed a notice of appeal on January 16, 1957.

The undisputed facts are as follows:

In September, 1944, John R. Willoughby, while in military service, was issued a National Service Life Insurance policy in the amount of $10,000. He received a medical discharge from the service in November, 1945, as suffering from diabetes mellitus, commonly called "diabetes", or sometimes known as "sugar diabetes". The Army Retiring Board found that Willoughby was incapacitated as "the result of an incident of service".

On October 1, 1947, Willoughby permitted the policy to lapse by failing to pay the premiums. On July 12, 1948, he applied for reinstatement of his lapsed insurance, pursuant to Veterans Administration regulations. Those regulations provided for such reinstatement on a comparative health basis; i. e., where the applicant is in as good health when he applies as he was on the due date of the premium in default.

In filling out the prescribed form, Willoughby answered the following questions as shown below, by marking X's in the appropriate places:

"8. Are you now in as good health as you were on the due date of the first premium in default? *Yes.*"

policies of insurance before or after August 1, 1946 issued, reinstated, or converted shall be incontestable from the date of issue, reinstatement, or conversion except for fraud, nonpayment of premium, or on the ground that the applicant was not a member of the military or naval forces of the United States."

"9. Have you been ill, or suffered or contracted any disease, injury, or infirmity, or been prevented by reason thereof from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health, since lapse of this insurance? *No*."

"10. Have you ever applied for disability compensation, retirement pay, pension or waiver of insurance premiums? *Yes*. (If '*yes*' give Claim No. below) C-No......."

Willoughby did not list a "C-No." ("C-Number" or "Claim-Number") in the space provided following Question 10.

On the basis of the representations as to comparative health contained in this application, and upon payment of the due premiums, Willoughby's policy was reinstated in July, 1948, without requiring a medical examination. He continued to pay the premiums on this policy until December 1, 1949, when the insurance again lapsed for the nonpayment of premiums.

On February 6, 1950, Willoughby executed another application for reinstatement on a comparative health basis, in reply to "comparative health" question, supra, he again checked the "*Yes*" blank, but answered "*No*" to the question as to whether, since the lapse of his insurance, he had been ill, or had consulted a physician, etc. This second application blank did not contain a question similar to Question 10, supra, relative to an application for disability compensation, etc.

Again on the basis of Willoughby's statements as to comparative health, the Veterans Administration, on February 9, 1950, reinstated his policy without requiring a medical examination. Payment of premiums continued until September 1, 1950, when the policy lapsed for the third time for failure to pay premiums.

On October 19, 1950, Willoughby for the third time applied for reinstatement of his insurance. This application was identical in form to the second application, and his answers were the same. Because the application was dated August 30, 1950, and not mailed until October 19, 1950, Willoughby was informed by the Veterans Administration that it would be necessary to execute a supplemental comparative health statement covering the period from August 30, 1950, through October 19, 1950. Willoughby was also required to certify that "I am now in sound condition, mentally and physically, excepting as follows. * * * "

Without making any insertions in the space provided therefor Willoughby executed this statement on December 1, 1950. In this connection, the District Court found:

"If the Insurance Section had followed up the answer given to the veteran to Question 10 on the first application, the falsity of the veteran's statements would have been disclosed."

Be that as it may, the Veterans Administration reinstated the policy, and Willoughby continued to pay premiums until his death in May, 1952.

The District Court found:

"That each and all of said representations * * * were untrue, and known by said John B. Willoughby to be untrue, and they and each of them were material facts; and that it must be presumed they were made with intent to deceive."

This finding was based in substance upon evidence that Willoughby had visited physicians in Fresno and Visalia, California; had been hospitalized in the Fresno Veterans Hospital, where he had received two blood transfusions, etc. All this medical history occurred between the lapse of his insurance on October 1, 1947, and his discharge from the Fresno hospital on September 8, 1950, "as having attained maximum hospital benefit with a diagnosis of 'diabetes, mellitus, severe' and 'glomerulus nephritis, chronic, severe, with azotemia'." It was the

progression of these diseases that resulted in his death.

The appellee filed a claim for the proceeds of the policy, which claim was denied on May 14, 1953, by the Director of the Claims Service of the Veterans Administration's District Office at Denver, on the ground that Willoughby had secured reinstatements of the policy by fraud in misrepresenting the state of his health in his applications for reinstatement.

After a denial of her appeal by the Board of Veterans' Appeals, the appellee brought this action in the court below to recover the $10,000 payable under the policy. The appellant raised the defense of fraud.

Although, as we have seen, expressly finding that the insured had knowingly made false representations as to material facts in his applications for reinstatement, with intent to deceive the Administration, the District Court stated that, under this Court's decision in United States v. Kelley, 9 Cir., 1943, 136 F.2d 823, hereinafter Kelley, infra, it was required to find that the appellant did not rely on the statements in the applications, since there was on file with the Administration information demonstrating the falsity of the representations. The Court held that the Administration, as a "single entity", had actual notice of the insured's true state of health.

This appeal followed.

### 2. *The Appellant's Arguments*

Since there is no suggestion that the employees of the Insurance Service of the Veterans Administration had personal knowledge of the contents of the claims file prior to the death of the insured, the decision below imposes upon the employees of the Insurance Service a duty to search the files for possible medical information that would contradict the applicant's own representations as to the state of his health.

In order to avoid delay in processing the flood of applications that followed the Veterans Administration's campaign to inform veterans of their insurance reinstatement rights, the Insurance Service automatically approved applications for reinstatement, provided that payments of premiums were enclosed and the applicant had "not unsatisfactorily" answered one of the questions on the application concerning his comparative health. This expeditious practice was followed even where the applicant indicated that he had previously filed a claim with the Administration, since it was apparent that having filed at one time a claim for "disability compensation, retirement pay, pension or waiver of insurance", did not mean that an examination of the claims file would provide information bearing on the applicant's health during the period of lapse.

Indeed, the Veterans Administration, regarding the question as surplusage, changed its applicant form (see Willoughby's second and third applications, supra), and no longer asks the veteran whether he previously filed a claim. Thus, the Insurance Service relies solely upon the relevant information furnished by the applicant bearing on his state of health.

Moreover, neither statute nor case law, including this Court's decision in Kelley, imposes upon the Insurance Service a duty to examine an applicant's claims file for medical information contradictory to that supplied by the applicant. 38 C.F.R. § 8.24, formulating the quantum of evidence that the Administrator deems satisfactory, provides that the "applicant's own statement of comparative health may be accepted as proof of insurability." This regulation is clearly a valid exercise of the Administrator's authority and is plainly "necessary" and "appropriate" to carry out the purposes of the Act. Section 808 of 38 U.S.C.A. authorizes the Administrator to make such rules and regulations "as are necessary or appropriate to carry out" the purposes of the Act, provided the rules and regulations are "not inconsistent with the provisions of" the Act.

Finally, even if the employees of the Veterans Administration who approved the application were under a duty to

search for the applicant's claims file, their failure to do so can neither bind the appellant nor estop it from contesting the validity of the policy on the ground of fraud.

### 3. *The Appellee's Case*

The "appellee apparently must abide by the findings of the Court below, but does not agree that her son, John Willoughby, made knowingly false representations, or had an intent to deceive". In giving his answers to the questions as to health, "he no doubt assumed that the V.A. most certainly knew about his condition of diabetes, for they had paid for all of his medical attention and hospitalization with respect to same since release from service". His answers meant merely that he had not contracted or been treated for some *other* disease or illness.

The burden was upon the appellant to prove all of the elements of its defense of fraud; namely, that the appellant was actually misled—*i. e.*, that it acted upon his statements, relying solely upon their truthfulness, and without knowledge of the "true facts". [*Note*. "Facts" cannot be otherwise than "true"!]

The Veterans Administration, which was the appellant's agent, had full knowledge of Willoughby's diabetes mellitus, which resulted in his death, "at the times they reinstated his policy".

This Court, in the Kelley case, has rejected the theory here maintained by the appellant, that the insurance section and the claims section of the Administration are separate entities. Hence in this case the District Court made its Finding that "the Veterans' Administration is one agency and is not separated into separate entities".

The appellant's defense of fraud failed particularly because it did not prove *reliance* on Willoughby's alleged fraudulent representations.

### 4. *The Applicable Statutory and Administrative Provisions 38 U.S.C.A. § 808:*

"The Administrator, subject to the general direction of the President, shall administer, execute, and enforce the provisions of this subchapter, shall have power to make such rules and regulations, not inconsistent with the provisions of this subchapter, as are necessary or appropriate to carry out its purposes, and shall decide all questions arising hereunder. * * * "

*Code of Federal Regulations, 1949 Edition, Title 38, §§ 8.23 and 8.24:*

"§ *8.23 Health requirements.* National Service life insurance an any plan may be reinstated if application and tender of premiums are made:

"(a) On or before July 31, 1948, or within three months after lapse, whichever is later, provided the applicant be in as good health on the date of application and tender of premiums as he was on the due date of the premium in default and furnishes evidence thereof satisfactory to the Administrator.

"(b) Subsequent to July 31, 1948, and after expiration of the three-month period mentioned in paragraph (a) of this section, provided applicant is in good health (§ 8.1) on the date of application and tender of premiums and furnishes evidence thereof satisfactory to the Administrator of Veterans' Affairs.

"§ *8.24 Application and medical evidence.* * * * Applicant's own statement of comparative health may be accepted as proof of insurability for the purpose of reinstatement under § 8.23(a), but, whenever deemed necessary in any such case by the Administrator, report of physical examination may be required."

### 5. *The Insurance Service of the Veterans Administration Relies Upon the Representations of an Applicant for Reinstatement, and Is Justified in Doing So.*

The appellant points out that efficient business practice requires that the section of the Veterans Administration, hereinafter the Administration,

handling insurance matters, be kept separate and distinct from those services handling hospitalization, pensions, disability, compensation, loans, educational matters, vocational rehabilitation, and other veterans' benefits. Those of us who engaged in the work of the old "Veterans Bureau" after World War I can readily understand that such a separation of functions would be even more desirable in handling the much heavier task of assisting the veterans of World War II, including the administration of the National Service Life Insurance Act of 1940, which we are here considering.

As we have seen, in the instant case the decedent Willoughby did not list a "C-No." in the space provided following Question 10, supra. But even had he done so, the appellee's position would not have been improved.

In United States v. Kiefer, 1955, 97 U.S.App.D.C. 101, 228 F.2d 448, 450–451, certiorari denied 1956, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815, rehearing denied 1956, 350 U.S. 977, 76 S.Ct. 431, 100 L.Ed. 847, the Court said:

"Where no claim number is disclosed on a reinstatement application, it has been held that 'knowledge of what is contained in the files of [other Veterans Administration services] is not imputable to the insurance service which passes upon application for reinstatement.' [Case cited.] We think there are considerations which justify the application of the same rule where the claim number *is* disclosed. [Case cited.]

"First, assignment of 'C' numbers is not limited to disability claims. They include, *inter alia,* claims for retirement pay, pensions or waiver of premiums. Hence a 'C' file does not necessarily contain information material in determining the insured's eligibility for reinstatement on the basis of his comparative health.

"Second, in the interest of efficient administration of its vast operations, the Veterans Administration insurance and compensation services maintain their respective files separately. [Cases cited.] And to expedite its great volume of business, the insurance service pursuant to regulation, reinstates insurance without requisitioning the 'C' file where the insured affirms that his health is no worse than it was at the time his insurance lapsed. Such reliance on the applicant's representations eliminates unnecessary delay caused by needless examination of claim files that may be unrelated to comparative health. Clearly the procedure under the regulation is reasonably related to efficient administration of the insurance program and is valid." [Emphasis supplied.]

Similarly, in McDaniel v. United States, 5 Cir., 1952, 196 F.2d 291, 294, the Court held that the Administration was legally justified in relying upon an applicant's answers. In that case it was observed:

"We think it equally plain that it cannot be justly held that an insured who has been asked clear and simple questions, upon the understanding that his answers may be accepted as true, without further inquiry, may avoid the consequences of having answered falsely by the claim, that the United States, by consulting the disability files could have found out that what he put forward as true was in fact false, and, therefore, may not complain that it was tricked into reinstating the certificate.

"As this court has said, 'It is elementary that one who is guilty of fraud cannot urge estoppel [or waiver] against the other party to the contract for the purpose of making his fraud effective', New York Life Ins. Co. v. Odom, 5 Cir., 93 F.2d 641, 644. Especially may he not do this here where it is not claimed that those responsible for reinstating the certificate actually knew that the answers given were false,

**530**

but only that, if they had followed up the reference in Sec. 10 to the C-number of the disability application they would have found by inquiry that they were."

Emphasizing the fact that the knowledge of another branch of the Veterans Administration should not be imputed to the insurance service of the parent body, in the recent case of United States v. Sinor, 5 Cir., 1956, 238 F.2d 271, 276, certiorari denied 1957, 353 U.S. 985, 77 S.Ct. 1287, 1 L.Ed.2d 1144, the Court observed:

"The activities of the Veterans Administration are of vast magnitude. Efficient administration requires a separation of the activities of its compensation service from its insurance service. It has been held that:

" 'The service of the Veterans' Administration handling insurance matters is distinct from the services governing hospitalization and vocational rehabilitation and knowledge of what is contained in the files of the latter is not imputable to the insurance service which passes upon application for reinstatement.' United States v. Cooper, 6 Cir., 1953, 200 F.2d 954, 956."

Finally, in Halverson v. United States, 7 Cir., 1941, 121 F.2d 420, 422–423, certiorari denied 1941, 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 556, the Court used the following language:

" * * * although it was known to the *Compensation* Division of the Administration at all times after December, 1932, that Halverson was not in fact in good health at the time of the reinstatement of his policy, and had consulted physicians to ascertain the cause of the condition of which he complained, that fact may not be used to estop the *Insurance* Division from cancelling the policy. [Case cited.]" [Emphasis supplied.][3]

### 6. *Even If the Employees of the Veterans' Administration Were Under a Duty to Examine His Compensation File, the Appellant Is Neither Bound Nor Estopped by Their Failure To Do So.*

■ If it be assumed, *arguendo*, that the Insurance Service employees who processed the decedent's applications for reinstatement of his insurance were under a duty to consider his disability compensation file in connection therewith, their failure to do so can neither bind the appellant nor estop it from contesting the policy for fraud.

Reinforcing "the conclusion that the rules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency like the Corporation, unless Congress has so provided," the Supreme Court, in the Federal Crop Insurance Corporation case, supra, 332 U.S. at page 383, 68 S.Ct. at page 3, said:

"It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it."

■ Again, in Wilber National Bank of Oneonta, N. Y. v. United States, 1935, 294 U.S. 120, 123, 55 S.Ct. 362, 364, 79 L.Ed. 798, the Court said:

"Undoubtedly, the general rule is that the United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit."

3. See also Clohesy v. United States, 7 Cir., 1952, 199 F.2d 475, 478; Jones v.

United States, 5 Cir., 1939, 106 F.2d 888, 891.

This Court has adhered to the above doctrine. In McIndoe v. United States, 9 Cir., 194 F.2d 602, 603, Judge Bone quoted with approval the following statement in James v. United States, 4 Cir., 1950, 185 F.2d 115, 118–119, 22 A.L.R.2d 830:

"It is well settled that the United States is in a position different from that of private insurers and is not estopped by the laches or unauthorized acts of its agents. [Cases cited.]"

And in the McDaniel case, supra, 196 F.2d at pages 294–295, Chief Judge Hutcheson pithily summarized the law on this subject:

"* * * estoppel may not be applied against the United States when acting in its sovereign capacity in administering the National Service Life Insurance Program."

■ In any event, the facts of this case do not call for the application of the doctrine of waiver or estoppel. In an insurance case, that doctrine is applicable only where the insured is "deceived or misled to his detriment", etc. Wilber National Bank of Oneonta, N. Y. v. United States, supra, 294 U.S. at page 124, 55 S.Ct. at page 364. The party who is guilty of fraud cannot urge those doctrines against the other party to the contract in order to make the former's fraud effective. McDaniel v. United States, supra, 196 F.2d at page 294.

■ In the present case, the court below found that Willoughby made false representations in the expectation that they would be relied upon. He therefore had no valid reason to suppose that his fraud could create a valid and binding insurance policy. As was said in Clohesy v. United States, supra, 199 F.2d at page 478:

"If, as plaintiff contends, the insured was misled by the fact that

the Veterans Administration continued to accept premiums on the policy to the time of his death, he could have been misled only into thinking that, up to that time, his conscious, deliberate deception had succeeded."

**7. The Kelley case, Decided by This Court, Can Easily Be Distinguished on the Facts.**

The appellee relies heavily upon the Kelley case, supra, decided by this Court. Kelley, however, is easily distinguishable on the facts.

In the first place, Judge Mathews carefully considered the claim of the appellant in that case "that the policy was obtained by fraudulent representations in the application therefor." [136 F.2d at page 825] The Court listed the six questions and answers in connection with which the misrepresentations were alleged to have occurred, and categorically demonstrated that in not a single answer had the deceased veteran made statements that could be proved to be fraudulent in the opinion of the jury.

It would unduly lengthen an already lengthy opinion to set out here Judge Mathews painstaking analysis of Kelley's six answers. Any unbiased reader of that opinion, however, can readily precede the marked factual distinctions between Kelley and the insant case. See 136 F.2d at pages 825–827.

Secondly, in Kelley "the evidence, instead of proving [as here] that the 'insurance section' had no knowledge of Kelley's application for compensation, tended to prove that it had such knowledge." [Page 826]

In a separate concurring opinion in Kelley, one judge rejected the plea of the United States "that it cannot be charged with such notice ['of the filing of a claim for compensation by the appellee' (sic)] [4] because of the administrative difficulty in examining its files in the compensation section to deter-

---

4. The judge should have said "by the appellee's *husband*." The appellee was the

*widow* of the deceased veteran. See 136 F.2d at page 824.

mine whether the appellant had correctly answered question 13(a)".

In belittling this contention of the United States, that Judge remarked:

"One can imagine the short shrift we would give to a similar plea of the Equitable Life [Insurance Company] if the question had been whether the insured under a life policy had filed with that company a claim for compensation under an agreement with the company for compensation for total permanent disability."

In contrast with his attempt to equate the position of the Veterans Administration with that of a private insurance company are the wise words of Mr. Justice Holmes, in White v. United States, 1926, 270 U.S. 175, 180, 46 S. Ct. 274, 275, 70 L.Ed. 530, where, referring to insurance activities of the United States for the benefit of soldiers, the learned jurist said that they reflected "a relation of benevolence established by the Government at considerable cost to itself for the soldier's good."

Without laboring the point further, we need only cite in the margin decisions by several of our sister courts that have discussed our Kelley case and have perceived the distinction between the facts in Kelley and facts similar to those at bar.[5]

8. *Conclusion*

 The Insurance Service of the Veterans Administration is legally justified in relying upon the representations of an applicant for reinstatement of his National Service Life Insurance.

Even if such reliance were not justified, the United States would be neither bound nor estopped by the Administration's failure to examine the veteran's Compensation file.

The Kelley case, decided by this Court on a diametrically different file, in no way is in conflict with the views expressed herein.

We do not think that a Federal court should reward the beneficiary of a fraudulent insured—particularly when the intended victim is the Government. "Men must turn square corners * * *"

Reversed.

---

5. Clohesy v. United States, supra, 199 F.2d at page 477; United States v. Kiefer, supra, 228 F.2d at page 451; Clarke v. United States, D.C.Mo., 1951, 102 F. Supp. 338, 340; and United States v. Nero, 2 Cir., 248 F.2d 16.