## JONES v. UNITED STATES.
### No. 9040.

Circuit Court of Appeals, Fifth Circuit.
Oct. 17, 1939.

889

Litigation, all of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The plaintiff-appellant, William W. Jones, while in the naval service was issued a war risk insurance policy on Feb. 1, 1918, which lapsed for non-payment of premiums March 1, 1919. In June, 1925, he obtained a reinstatement of it, and on July 1, 1927, a converted policy was issued for the same amount. This lapsed for non-payment of premium May 1, 1928, but on an application dated Oct. 4, 1928, was reinstated on Jan. 1, 1929. On Feb. 11, 1931, claiming total and permanent disability, Jones sought payment on the policy. The claim was finally rejected in 1933 on the ground that the first reinstatement had been fraudulently obtained. Suit was brought on the claim and tried to a jury on the sole issue of fraud. The evidence was a stipulation of facts supplemented by testimony. Jones made motions to exclude all the evidence of fraud prior to the conversion of the policy and its subsequent reinstatement because these were new contracts, and if any previous fraud had existed the defendant was fully aware of it; and if the reinstatement as sought ought not to stand Jones was and is entitled to a reinstatement on an alternative plan provided by law under which the asserted fraudulent misrepresentations would be immaterial. These motions were overruled, and this judgment constitutes the only error specified. The jury found for the defendant, judgment was entered, and appeal taken.

The evidence touching the fraud was in brief this: In his application for reinstatement in 1925 Jones sought to reinstate by showing good health and paying two premiums. He stated in answer to questions that he had not consulted a physician about his health since the lapse of the insurance in 1919 except for influenza and a tonsil operation in 1924, naming the physicians. He stated also that he had never been treated for any disease of brain or nerves, or genito-urinary organs, and the medical examination specifically stated he had never had syphilis. The truth, as stipulated, was that in 1916 he had contracted syphilis while in the navy but ashore at the Virgin Islands, had been

O'Glen Ray, of Atlanta, Ga., for appellant.

Fendall Marbury and Young M. Smith, Attys. Department of Justice, and Julius C. Martin, Director, Bureau of War Risk

then treated for chancre, and on July 11, 1924, began to have convulsions, and on that date was examined by a civilian physician and diagnosed as having "beginning paresis due to syphilis; laboratory Wasserman (blood) four plus; prognosis unfavorable." He was regularly treated by this physician with salvarsan until Aug. 1, 1925, and thus was under treatment when he applied for reinstatement in June, 1925. The physician who treated him for syphilis was not mentioned in the application. Jones testified, admitting the undisclosed treatment, but saying that he was under the impression his trouble was epilepsy, and the doctor did not tell him it was syphilis prior to the application for reinstatement. This explanation, if believed, does not excuse, because under the questions asked he would be as much bound to disclose treatment for epilepsy as for syphilis. But other evidence shows that he stated to another physician friend in 1924 that he had syphilis, and a year later he wrote in detail the history of his case and treatments to still another physician, recognizing his trouble to be syphilis and never mentioning epilepsy. The jury could well have found that there was wilful and intentional deceit in obtaining the reinstatement, and that it induced the reinstatement.

■ The deceit was not rendered harmless by the provisions of law found in 38 U.S.C.A. § 515, permitting a reinstatement when the applicant is not in good health if his "disability is the result of an injury or disease, or of an aggravation thereof, suffered in the active military or naval service during the World War", provided he pays all back premiums with 5% interest, or charges them as a lien against the policy. These provisions contemplate "acceptance of the application for reinstatement" after an investigation of these conditions, which is to say, a determination by the Director of the Veterans Bureau, now styled the Administrator of Veterans Affairs, that the conditions are established. The Director's action is final, is not reviewable in court, and cannot be substituted by court action. Meadows v. U. S., 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852, 73 A.L.R. 310. The Director here did not make such findings nor give an acceptance based on them. The insured elected to seek reinstatement on the basis of good health, and thus to avoid the uncertainty of establishing service connected disability

and to save the six years of back premiums that would have to be paid. His fraudulent effort succeeded. When detected after total and permanent disability had supervened, he should not be treated with such favor as to substitute the other form of reinstatement. Sect. 515 names as one condition that he shall not be totally and permanently disabled when reinstated. While it does appear that by a rating sheet dated Jan. 8, 1932, he was rated as entitled to compensation from July 11, 1924, for a service connected disability of general paresis, this is not the equivalent of an "acceptance" or "approval" on that ground of an application for reinstatement of his insurance as of June, 1925. Jones, a man of high intelligence as shown by this record, presented his application on the basis of good health, concealing his disability and saving his back premiums. He should not now be treated as though he had revealed his condition, proved that it was service connected, and had paid those premiums. The very generous provisions of the War Risk Insurance Act are somewhat paternal, but the United States are entitled to good faith from the insured. Fraud is expressly excepted from the incontestible clause.

■ The next contention is that the deceit soon became known in the Veterans Bureau and with that knowledge the policy was converted in 1928 and the converted policy was reinstated in 1929 and premiums were collected, thus waiving the fraud or estopping the United States to assert it. As to that the facts are these: On Oct. 28, 1925, Jones, having applied for compensation because of deafness, was examined by a Veterans Bureau doctor in Atlanta and diagnosed as having cerebrospinal syphilis and early paresis. He was treated in a Veterans hospital at Augusta until March, 1926. Subsequent examinations occurred at long intervals up to 1933, with findings of paralysis and paresis. The stipulation shows that these examinations were made by Veterans Bureau physicians in Atlanta and Augusta and what the findings were. It does not show what was done with the reports, or what officers of the Veterans Administration saw them prior to 1932 or 1933, when the Administrator and his Board of Appeals rejected this insurance claim on account of them, and cancelled the policy and tendered back the premiums paid since reinstatement. It is argued that the Director of the Veterans

Bureau in passing upon the application to convert the insurance and afterwards on that to reinstate it, was bound by the knowledge touching this veteran acquired by every physician or other subordinate of the Bureau, and especially was bound to know the contents of the file of the Bureau respecting the insured's compensation claim, since these applications each disclosed that a claim for compensation had been made and stated its file number. We think that the Director, or the person acting for him, in approving the application in Washington, was bound to review the history of the insurance, or at least may be presumed to have done so, and to have had the reinstatement of 1925 in mind; and if it had been proven also that he had obtained the file concerning Jones' claim for compensation and had in fact learned that the applicant had syphilis of long standing and incipient paresis a few weeks after the reinstatement, he would in the exercise of good faith on behalf of the United States have been bound promptly to elect whether to rescind the reinstatement of 1925, and his failure to do that and his approval of the conversion and reinstatement would condone the fraud and amount to an election to maintain the insurance. But we do not think that the knowledge which physicians connected with the Bureau obtained in investigating the compensation claim, though their reports be in a file concerning that claim, is to be imputed to the Director in passing on the applications for the conversion and for the reinstatement of the insurance policy which were fair on their face. The mere mention of the compensation claim in response to a question was not notice that physicians' reports material to the 1925 reinstatement even existed. Although these applications themselves showed that paralysis existed when they were made in 1928 and 1929, that did not inform the Director that the answers made in 1925 were false. It has been held that the Director or Administrator is not bound by the contents of files touching the insured veteran in other departments of the Government. United States v. Riggins, 9 Cir., 65 F.2d 750; United States v. Depew, 10 Cir., 100 F.2d 725. Nor is knowledge imputable to him and to the United States as a matter of law of the contents of files in the Bureau itself touching another matter.

If the reinstatement of 1925 was invalid, the converted policy must fall. The court below rightly held that a verdict might be lawfully rendered for the defendant, and did not err in refusing to rule out the evidence of the fraud in 1925.

Judgment affirmed.