### THOMPSON v. UNITED STATES.
### Civ. A. 4534–51.

United States District Court
District of Columbia.

Dec. 18, 1952.

David G. Bress and Sheldon E. Bernstein, Washington, D. C., for plaintiff.

Charles M. Irelan, U. S. Atty., Washington, D. C., D. Vance Swann and Onan A. Hydrick, Attys., Department of Justice, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

The above case came on for hearing on a motion by plaintiff for summary judgment. Defendant filed a cross motion for summary judgment and, in the alternative, for judgment on the pleadings. Both plaintiff and defendant have stipulated that there is no issue as to the facts of the case and the question to be decided is purely one of law.

Plaintiff is the beneficiary under a $10,000 National Service Life Insurance Policy

which the insured, plaintiff's son, secured while he was in the military service. The insurance lapsed, for failure to pay the premiums, on July 7, 1946. The insured was discharged from the service on May 11, 1946, on a Certificate of Disability by reason of valvular heart disease, mitral stenosis, and insufficiency, and aortic stenosis with regurgitation, cause undetermined. At the time of his separation the insured filed an application for pension or compensation for disability. resulting from active military service, under claim number 9–482–056, on account of a rheumatic heart and deafness of his left ear incurred during military service. The insured was examined at the Washington Regional Office of the Veterans' Administration on September 9, 1946, resulting in diagnosis of rheumatic heart disease, mitral stenosis, etc., and was treated as an out-patient at the Washington Regional Office, commencing March 9, 1948. On July 31, 1948, the insured made an application for reinstatement of his insurance policy, wherein he represented, among other things, that he was then in as good health as he was on the due date of the first premium in default;[1] and that he had not been ill, or suffered or contracted any disease, injury or infirmity, or been prevented by reason of ill health from attending to his usual occupation or consulted a physician or other practitioner for medical care or treatment at home, hospital, or elsewhere, in regard to his health since the lapse of the insurance in this action;[2] and he also answered that he had applied for disability compensation, giving his proper claim number.[3] The insurance was then reinstated, effective July 7, 1948. The insured died August 31, 1950 from rheumatic endocarditis, due to congestive heart failure.

The motions of plaintiff and defendant present the following questions:

1. Question 8—Are you now in as good health as you were on the due date of the first premium in default? Yes.

2. Question 9—Have you been ill, or suffered or contracted any disease, injury or infirmity, or been prevented by reason therefor from attending your usual occupation, or consulted a physician, surgeon,

1. Did the insured obtain reinstatement of his National Service Life Insurance Policy by fraud?

2. Assuming question No. 1 is answered in the affirmative, can the Government defend on the ground of fraud in view of the fact that the Veterans' Administration was possessed of information as to the insured's actual medical condition at the time his application for reinstatement was made, and the application itself calls attention to the insured's disability compensation claim and his claim number? In other words, is the element of reliance present which is essential in the proof of fraud?

■ In Pence v. U. S., 1941, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510, the elements of fraud are stated to be (1) a false representation (2) in reference to a material fact (3) made with knowledge of its. falsity (4) and with intent to deceive (5) with action taken in reliance upon the representation.

The Government contends that the answers given in response to questions 8 and 9 were false; that the insurance policy was thereafter reinstated in reliance on the truth of these false answers and that because of this fraud the reinstatement was void. Plaintiff denies that there was any intention on the insured's part to defraud the defendant and that in any event, assuming that there was fraud, the Government had actual knowledge of it and did not rely upon fraud in the reinstatement of the insurance policy.

■ 1. There is a serious question in the Court's mind as to whether the admitted facts indicate any intention to defraud on the part of the insured. Certainly at least as to question 8 there appears to be no evidence of any intent to defraud. Insured was discharged from service on a medical discharge on the basis of heart trouble.

or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health, since lapse of this insurance? No.

3. Question 10—Have you ever applied for disability compensation, retirement pay, pension or waiver of insurance premiums? Yes. Claim No. 9–482–056.

When he applied for reinstatement he still had the same heart condition and was in as good health as on the due date of the first premium in default. Even as to question 9 the Court doubts the sufficiency of proof as to the intent to defraud. Insured was a laborer without much education. He was aware of the fact that the defendant had complete information as to his health and did not hesitate in giving his compensation "C" number at the time of reinstatement. Insured knew that examination of that file would have given the Government complete information of his physical condition at the time of reinstatement. It does not seem to the Court under these circumstances that the insured was trying to cover up.

2. Assuming arguendo, however, that the record indicates an intent to defraud on the part of the insured, still the Government has not proven another essential element of fraud, namely, reliance upon the fraudulent representations in reinstating the insurance. This is so because defendant had the "C" number of insured's compensation claim, and had actual knowledge of the information requested in questions 8 and 9. In similar cases in the Seventh and Ninth Circuits, the Court of Appeals has held that under the facts as disclosed here the Government cannot assert fraud as a defense.[4]

In the Kelley case, supra, the applicant for insurance was asked certain questions concerning his health, whether he had applied for government compensation and whether he had consulted a physician. He answered in the negative except that he made reference to a hemorrhoidectomy. The evidence showed that he had applied for compensation of a veteran disabled in World War and that he had consulted a physician. The Court of Appeals pointed out that it was not necessary for the jury to find that the answers were made with knowledge of their falsity or with intent to deceive, nor was the jury required to find that the Government relied on or was deceived by the answers to the question referring to the application for compensation for the Government had full knowledge of the claim and granted the application for insurance with knowledge that the applicant had applied for compensation.[5] In view of these facts, the Court of Appeals of the Ninth Circuit sustained as proper a verdict of the jury for the widow of the insured.

The Clohesy case, supra, a recent decision from the Seventh Circuit, was called to the Court's attention by defendant subsequent to the argument and submission of the case. Even though the result of the Clohesy case was against the beneficiary, the language of the Court in disposing of the case strongly supports plaintiff's position herein. In that case as here the matter was submitted on an agreed statement of facts. Clohesy's insurance lapsed for non-payment of premiums. On December 20, 1947, he applied for reinstatement of the policy. Concerning his health, he stated that he was in as good health as he was on the due date of the first premium in default and that he had not consulted a physician, been ill, or contracted any disabling disease since the lapse of the policy. On January 27, 1948, the application for reinstatement was approved. It was later shown that the insured had suffered a severe heart attack the day before he applied for reinstatement and that he had consulted a physician. On March 11, 1948, the insured filed an application for compensation, giving the correct date of the heart attack and listing the physician who treated him. The insured died on January 13, 1949. The reinstatement was cancelled by the Veterans' Administration on the ground that it had been obtained by fraud. The beneficiary did not deny that there was fraud in the application for reinstatement, but claimed that the knowledge of the Compensation Section constituted knowledge to the Insurance Section; that with the knowledge the Government elected to continue the policy, and that therefore the Government could not cancel the policy. The Court of Appeals for the Seventh Circuit, in affirming a judgment in favor of the Government, discussed and distinguished U. S. v. Kelley,

4. U. S. v. Kelley, 9 Cir., 1943, 136 F.2d 823; Clohesy v. U. S., 7 Cir., 1952, 199 F.2d 475, 477.

5. The claim number was endorsed on the application for insurance.

supra, but agreed with the result in the Kelley case because the application for reinstatement in that case contained the compensation "C" number. Commenting on this in the Clohesy case, the Court said:

"There it was shown that all applications by veterans for compensation were identified by a 'C' number and that the veteran's application for insurance in that case, at the time it was approved by the Insurance Section, bore his 'C' number, thus showing to the person or persons passing on the application that the veteran had then made an application for Government compensation. On the particular facts of that case we agree that there the knowledge, not only of the Veterans Administration but of the Insurance Section of that department, could be properly said to be 'actual, not imputed'. Under those circumstances we think the court properly held that the Government could not claim that fraud of the insured caused the approval of the insurance application."

This is the situation here. The Veteran's application for reinstatement, when it was approved by the Insurance Section, bore the veteran's "C" number "thus showing to the person or persons passing on the application that the veteran had made an application for Government compensation." Consequently, on those facts, knowledge not only of the Veterans' Administration but also of the Insurance Section of that department can properly be said to be actual not imputed. Under these circumstances, the Government is in no position to claim here that the fraud of the insured caused the approval of the application for reinstatement.

The Court recognizes the fact that the Court of Appeals for the Fifth Circuit has taken a position that seems contra to the position of the Seventh and Ninth Circuits.[6]

In the McDaniel case, supra, which is closer to the facts of the case at bar than the Cardwell or Jones cases, supra, the "C" number of the veteran was specified in the application for reinstatement. It is to be noted, however, that the veteran in that case was a college graduate and a lawyer who had served as a legal officer in service and as a personnel officer for government agencies as a civilian while in the instant case the veteran was a common laborer. Aside from that fact, however, the Court feels that the reasoning of the Seventh and Ninth Circuits is more persuasive, namely, that when the "C" number of the veteran's compensation claim is stated accurately by the veteran in his application for reinstatement of insurance, that this constitutes actual knowledge to the Government of the information disclosed in the compensation file as to the veteran's health.

The Court concludes, therefore, that the motion by plaintiff for summary judgment should be granted, and that the motion of the defendant for summary judgment, or in the alternative, judgment on the pleadings, should be denied.

---

6. See McDaniel v. U. S., 5 Cir., 196 F.2d 291; see also Cardwell v. U. S., 5 Cir., 186 F.2d 382; Jones v. U. S., 5 Cir., 106 F.2d 888.