**UNITED STATES v. THOMPSON.**
**No. 11778.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 16, 1953.

Decided Dec. 31, 1953.

Mr. Russell Chapin, Attorney, Department of Justice, *pro hac vice*, by special leave of Court, with whom Messrs. Leo A. Rover, U. S. Atty., and William J. Peck, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellant. Messrs. Lewis A. Carroll, Asst. U. S. Atty., and William R. Glendon, Asst. U. S. Atty. at the time the record was filed, also entered appearances for appellant.

Mr. Sheldon E. Bernstein, with whom Messrs. Alvin L. Newmyer and David G. Bress, Washington, D. C., were on the brief, for appellee.

Before CLARK, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The United States appeals from summary judgment in favor of appellee for the amount found to be due under a National Service Life Insurance policy. The policy had been reinstated after lapse for non-payment of a premium. The insured veteran thereafter died, and appellee Thompson, plaintiff below, is the principal beneficiary named in the policy. The United States contends that on the undisputed facts the District Court should have found that reinstatement of the policy had been procured by the fraud of the insured and accordingly judgment should have been entered for the Government on its cross motion for summary judgment.

The policy was issued to William G. Thompson in 1944 while in the military service, from which he was discharged in May, 1946, because of disability due to heart disease. The insurance lapsed because of non-payment of a premium due July 7, 1946. He applied for its reinstatement on July 31, 1948. In the application he answered the following questions as indicated:

"8. Are you now in as good health as you were on the due date of the first premium in default? Yes.

"9. Have you been ill, or suffered or contracted any disease, injury,

or infirmity, or been prevented by reason thereof from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere in regard to your health, since lapse of this insurance? No. (If 'yes,' give all dates and full particulars below.) [1]

"10. Have you ever applied for disability compensation, retirement pay, pension or waiver of insurance premiums? Yes. (If 'yes,' give Claim No. below.) C–No. 9–482–056"

■ On the application form these questions were not physically arranged as above. Question 10 was directly beneath question 8. Question 9 was to the right of question 8. An answer was given by placing a check-mark in a square, one square being provided for yes and another for no.

The application was approved, reinstatement became effective as of July 7, 1948, and premiums were paid through July 6, 1950. The insured died August 31, 1950, from rheumatic endocarditis due to congestive heart failure. The Veterans Administration ruled that the reinstatement was fraudulently obtained by knowingly false answers to questions 8 and 9, and refused payment to appellee,[2] whereupon he filed suit.

In a memorandum opinion [3] the trial judge said it did not seem that the veteran intended to defraud the Government and, moreover, the United States had not proved that in reinstating the policy it had relied upon his representations. The latter view rested upon the theory that by the answer to question 10, giving the veteran's compensation claim number, the Veterans Administration had knowledge of the relevant information sought by questions 8 and 9, because the file of the compensation claim contained complete information as to the veteran's health since lapse of the policy. In holding that the Veterans Administration for this reason had knowledge of the facts, and that the Government had therefore failed to establish an element essential to its defense of fraud, namely, reliance upon the answers, the court leaned upon United States v. Kelley, 9 Cir., 136 F.2d 823, and cited Clohesy v. United States, 7 Cir., 199 F.2d 475. Compare, however, McDaniel v. United States, 5 Cir., 196 F.2d 291. We lay aside the problem thus presented, deeming it unnecessary to be resolved. We affirm the judgment because in any event we think the answers to questions 8 and 9 cannot be said as matter of law to have been made with intent to deceive, another element essential to the defense of fraud. Pence v. United States, 316 U.S. 332, 338, 62 S. Ct. 1080, 86 L.Ed. 1510.

The answer to question 8 gave an opinion which, in the circumstances of this case, the evidence does not show to have been knowingly false, or to have been advanced with intent to deceive. When Thompson was discharged his certificate of disability showed a serious heart condition. We cannot say that his representation he was in as good health when he applied for reinstatement as he was on the due date of the first premium in default was knowingly false. It is not clear he knew his health was worse.

With respect to question 9, it is undisputed that in September, 1946, subsequent to the lapse, the veteran was examined at the Washington Regional Office of the Veterans Administration, resulting in a diagnosis he suffered from rheumatic heart disease and other heart infirmities, and also that in February, 1947, he gave up his employment due to his physical condition. It is undisputed, further, that he was physically examined and treated as an out-patient of the Washington Regional Office in March,

---

1. No dates or particulars were set forth in the space provided therefor.

2. Fraud in procuring reinstatement would render the policy contestable. 54 Stat. 1009, as amended, 38 U.S.C.A. § 802(w).

3. Reported at 109 F.Supp. 283.

April and June, 1948. But it does not necessarily follow that his answer to question 9, inconsistent with these facts, was a fraudulent one.

When the veteran filled out the application it might well be that he read question 10 before answering 9; indeed, because of their relative positions he might have answered 10 before 9. Be that as it may he answered 10 properly and gave the file number of his compensation claim. It is reasonable to assume he would understand this file to contain, as in fact it did, all data relevant to question 9. There is no evidence of any illness apart from that shown by this file, nor of any other treatment or examination by doctors. His whole relevant medical experience had been with the Veterans Administration itself. With this in mind the veteran, a laborer without much education, read question 9. It is ambiguous. It asked if he had been ill "or suffered or contracted any disease," "or been prevented by reason thereof", that is, by reason of an illness, or a disease suffered or contracted,[4] "from attending" his "usual occupation", "since lapse of this insurance". It is possible insured thought these parts of the question related solely to an illness or disease contracted since lapse of the insurance. He might have thought the question was not directed to his disease, inasmuch as it long antedated the lapse. It was not "suffered or contracted" since the lapse. As to the portion of the question regarding consultation with a physician, surgeon or other practitioner, it related to consultation for medical advice or treatment "at home, hospital, or elsewhere * * * since lapse of this insurance". There is no evidence of such consultation or treatment at home, or elsewhere except at the Washington Regional Office of the Veterans Administration. He might have thought, though erroneously, that the question did not call for information as to this, already in his C. file, the number of which he gave in answer to question 10. It is by no means clear that his erroneous answer was, in these circumstances, knowingly false, or made with intent to deceive.

 Of course we do not say the veteran did not intend to deceive. On the whole there are indications that he did. But such indications are not enough. Fraud must appear by clear and satisfactory, or convincing, evidence. Northwestern Mut. Life Ins. Co. v. West, 62 App.D.C. 381, 383, 68 F.2d 428, 430, certiorari denied, 292 U.S. 627, 54 S.Ct. 631, 78 L.Ed. 1482; College Silk Throwing Co. v. American Credit Indemnity Co., 3 Cir., 43 F.2d 668, 670, certiorari denied, 282 U.S. 891, 51 S.Ct. 105, 75 L.Ed. 786; New York Life Ins. Co. v. Bacalis, 5 Cir., 94 F.2d 200, 202. It did not so appear to the court below. The trial judge thought the accused was not "trying to cover up." We cannot say that the judge's doubts and his consequent unwillingness to find fraud, are so clearly erroneous as to require a contrary conclusion on this review. While we may not refuse to find fraud because of the mere possibility the answer to question 9 was innocent—we may not be fanciful about the matter—we think here sufficient reason appears for serious uncertainty. We have the check-mark placed in the square. It was correct as an answer to part of the question, but not as to all. The latter part might have become confused in the veteran's mind with the former, or with the information given under question 10, which he knew was already in possession of the Veterans Administration.

Affirmed.

4. The ambiguity of the question is emphasized by the fact that the Board of Veterans Appeals, as well as the court below, construed the phrase "prevented by reason thereof" to refer to any illness whether incurred prior or subsequent to the lapse. In their respective opinions, both Board and court state that insured's negative answer to question 9 was a representation that he had not been ill, or suffered, or contracted any disease, injury, or infirmity, or been "prevented by reason of ill health" from attending to his usual occupation.