**UNITED STATES of America, Appellant,**

v.

**Helen M. KIEFER, Appellee.**

No. 12475.

United States Court of Appeals District of Columbia Circuit.

Argued April 7, 1955.

Decided Aug. 18, 1955.

Writ of Certiorari Denied Jan. 9, 1956.

See 76 S.Ct. 305.

---

Mr. Robert S. Green, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. Leo A. Rover, U. S. Atty., was on the brief, for appellant. Messrs. Samuel D. Slade and Julian H. Singman, Attys., Dept. of Justice, and Mr. Lewis Carroll, Asst. U. S. Atty., also entered appearances for appellant.

Mr. Claude L. Dawson, Washington, D. C., for appellee.

Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.

BAZELON, Circuit Judge.

Appellee sued, as sole beneficiary, for benefits under her deceased brother's National Service Life Insurance policy. The District Court rejected the Government's affirmative defense of fraud and entered summary judgment for appellee.[1] The Government appeals.

██ The essential elements of fraud are "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with intent to deceive (5) with action taken in reliance upon the representation."[2] These elements, the Government asserts, are established by the fact that the insured's policy had been reinstated upon an application which falsely represented, in answers to questions numbered 8 and 9, that he was in as good health at the time of the application as he was on the due date of the first premium in default.[3]

---

1. Fraud in procuring reinstatement is a statutory ground for contesting a policy issued under the National Service Life Insurance Act, 60 Stat. 787 (1946), 38 U.S.C.A. § 802(w).

2. Pence v. United States, 1942, 316 U.S. 332, 338, 62 S.Ct. 1080, 86 L.Ed. 1510.

3. Questions 8 and 9 and the insured's answers were as follows:

"8. Are you now in as good health as you were on the due date of the first premium in default? [x] Yes. [ ] No.

"9. Have you been ill, or suffered or contracted any disease, injury, or infirmity, or been prevented by reason thereof from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in

In answer to question number 10, however, the insured disclosed the existence and "C" number of his Veterans Administration claim file containing information from which the truth was determinable.[4] According to that file, the insured was discharged from the Army in 1945 on a certificate of disability for chronic bronchial asthma. This condition resulted in a 1945 Veterans Administration grant of disability compensation for which a claim number was assigned. Prior to lapse of the policy in September 1947, the insured, on two occasions, was examined and treated at the Veterans Administration hospital for bronchial asthma. After the lapse, according to the claim file, he was hospitalized twice under the auspices of the Veterans Administration. The diagnosis on the first occasion was asthma, mild hypertension and nephritis. In March and April 1948, during the second hospitalization lasting nearly a month, his condition was diagnosed as cirrhosis of the liver. The examining doctor observed that the patient had been "drinking steadily for six months about a quart a day. His liver is down to its iliac crest.

He has been nauseated and vomiting for some time. No food for 36 hours." This observation was made immediately prior to the reinstatement application in April 1948.

The District Court ruled that disclosure of the claim file number precluded the Government, as a matter of law, from claiming reliance upon the false representations—and thus barred the defense of fraud.[5] We think this ruling is erroneous. The view implicit therein is that the Veterans Administration insurance service had notice, either actual or constructive, of the information in the insured's claim file when it allowed his application for reinstatement. But there is no evidence of actual notice,[6] and we hold the Government may not be charged with constructive notice in the circumstances of this case.[7]

Where no claim number is disclosed on a reinstatement application, it has been held that "knowledge of what is contained in the files of [other Veterans Administration services] is not imputable to the insurance service which passes upon application for reinstatement."[8] We think there are considera-

regard to your health, since lapse of this insurance? [ ] Yes [x] No. (If 'yes,' give all dates and full particulars below.)"

By regulation, reinstatement of lapsed insurance may be made on a comparative health basis. 38 C.F.R. § 10.3423 (Supp. 1946), as amended, 12 Fed.Reg. 7116 (1947), 13 Fed.Reg. 181 (1948); 38 C.F.R. § 10.3424 (Supp.1946), as amended, 13 Fed.Reg. 657 (1948).

4. Question 10 and insured's answer read as follows:

"10. Have you ever applied for disability compensation, retirement pay, pension or waiver of insurance premiums? [x] Yes [ ] No. (If 'yes,' give Claim No. below.) C-No. 5 241 066."

5. The court observed that the "government may not close its eyes to what it can find by reference to its own files," and purported to follow a decision of another of its branches and decisions of the Courts of Appeals for the Seventh and Ninth Circuits. Thompson v. United States, D.C.D.C., 1952, 109 F.Supp. 283,

affirmed, 1953, 93 U.S.App.D.C. 231, 210 F.2d 724; Clohesy v. United States, 7 Cir., 1952, 199 F.2d 475, discussed infra, note 8; United States v. Kelley, 9 Cir., 1943, 136 F.2d 823.

6. The record does not reflect, for example, that those who passed on the application requisitioned and looked into the claim file.

7. The insured filed his reinstatement application in April 1948 and paid premiums until his death in November 1951, a period of about only three and a half years. We do not decide whether equitable principles would preclude our present holding in a case where the insured had paid premiums for a great number of years after the filing and approval of his reinstatement application. In such a case it might also be argued that the Government suffered little or no detriment.

8. United States v. Cooper, 6 Cir., 1953, 200 F.2d 954, 956. Similarly, knowledge of falsity coming into possession of the compensation section subsequent to rein-

tions which justify the application of the same rule where the claim number is disclosed.[9]

First, assignment of "C" numbers is not limited to disability claims. They include, *inter alia*, claims for retirement pay, pensions or waiver of premiums.[10] Hence a "C" file does not necessarily contain information material in determining the insured's eligibility for reinstatement on the basis of his comparative health.[11]

Second, in the interest of efficient administration of its vast operations, the Veterans Administration insurance and compensation services maintain their respective files separately.[12] And to expedite its great volume of business,[13] the insurance service, pursuant to regulation, reinstates insurance without requisitioning the "C" file where the insured affirms that his health is no worse than it was at the time his insurance lapsed.[14] Such reliance on the applicant's representations eliminates unnecessary delay caused by needless examination of claim files that may be unrelated to compara-

tive health.[15] Clearly the procedure under the regulation is reasonably related to efficient administration of the insurance program and is valid.

United States v. Kelley[16] is not to the contrary. There the alleged falsity related to the insured's statement, on an original application for insurance, that he had never applied for "government compensation." A Veterans Administration official had endorsed Kelley's "C" number on his application prior to its approval. The jury could reasonably have inferred from this endorsement that, since the official had found the "C" number himself, he must have found it as a result of inspection of the file. On that basis, we agree with the Seventh Circuit in Clohesy v. United States[17] that, on the particular facts of Kelley, the insurance section passing on the application had "actual, not imputed" knowledge that the insured had filed for compensation.

Lastly, our holding that the Government is not precluded from claiming reliance is also supported by equitable con-

---

statement is not imputed to the insurance section so as to estop the Government from asserting fraud. Clohesy v. United States, 7 Cir., 1952, 199 F.2d 475; Halverson v. United States, 7 Cir., 1941, 121 F.2d 420, certiorari denied, 1941, 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 556. In Clohesy, falsity could not have been determined from Veterans Administration files at the time the application was reinstated; it was disclosed subsequent to reinstatement by the insured's application for compensation, and a later letter in which his claim number was cited. The Court held that continuation of the policy by the insurance section, in the face of the "true facts" which later came into possession of the compensation section, did not vitiate the original fraud.

9. See McDaniel v. United States, 5 Cir., 1952, 196 F.2d 291.

10. See note 4, supra.

11. Even if the file related only to a disability claim, such a claim would not necessarily bar reinstatement, e. g., where it was based on a disease antedating the lapse which had not worsened.

Cf. Jones v. United States, 5 Cir., 1939, 106 F.2d 888, 891.

12. Clohesy v. United States, 7 Cir., 1952, 199 F.2d 475, 477; Halverson v. United States, 7 Cir., 1941, 121 F.2d 420, 422, certiorari denied, 1941, 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 556.

13. Between June 1947 and June 1948, 1¾ million applications were filed covering a total of ten billion dollars of insurance. Annual Report, Administrator of Veterans' Affairs, H.Doc. 8, 81st Cong., 1st Sess. 66 (1949).

14. 38 C.F.R. § 10.3424 (Supp.1946), as amended, 13 Fed.Reg. 657 (1948) provides in pertinent part that the "Applicant's own statement of comparative health may be accepted as proof of insurability for the purpose of reinstatement under § 10.3423(a) * * *" And see McDaniel v. United States, 5 Cir., 1952, 196 F.2d 291, 294, note 3.

15. See note 11, supra.

16. 9 Cir., 1943, 136 F.2d 823.

17. 7 Cir., 1952, 199 F.2d 475, 477.

siderations. A contrary *holding would* allow an applicant who supplies false answers, with awareness of their falsity to

> "avoid the consequences of having answered falsely by the claim, that the United States, by consulting the disability files could have found out that what he put forward as true was in fact false, and, therefore, may not complain that it was tricked into reinstating the certificate."[18]

Because the District Court ruled the defense of fraud barred by the lack of reliance, it did not consider whether the false representations were made with knowledge of their falsity and with intent to deceive, other elements of the defense of fraud. *In United States v. Thompson,*[19] we were able to decide these matters in our disposition of the appeal since all the facts had been stipulated on cross motions for summary judgment. Thus we were assured not only that the parties had no further evidence to adduce but also that there was no genuine issue as to any material fact. In the present case, however, appellee alone moved for summary judgment, and solely on the issue of reliance. Both parties limited their affidavits to that issue. Until they have had an opportunity to adduce evidence on other essential elements of fraud, we cannot assume that there is no genuine issue of material fact in respect thereto.

Accordingly, we conclude that the District Court erred in its view of the applicable law with respect to the element of reliance. The case is remanded with directions to afford the parties an opportunity to litigate that issue and any other appropriate issues in further proceedings.

*So ordered.*

---

18. McDaniel v. United States, 5 Cir., 196 F.2d at page 294. Congress has recently enacted legislation protecting part of the insured's investment in premiums paid toward a policy cancelled for fraud. An amendment to § 602(w) of the National Life Insurance Act provides for a refund to the insured or his beneficiary of premiums "for any period subsequent to two years after the date of such fraud * *." 68 Stat. 28 (1954).

19. 1953, 93 U.S.App.D.C. 231, 210 F.2d 724.