Joseph Thomas RONAYNE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. 11615.

United States District Court
E. D. New York.

April 11, 1957.

Leftoff & Spruch, New York City,. by George Leftoff, New York City, of counsel, for plaintiff.

Leonard P. Moore, U. S. Atty. for the Eastern Dist. of New York, by Elliott Kahaner, Asst. U. S. Atty., Brooklyn,. N. Y., for the United States.

BYERS, District Judge.

This is an action upon a National Service Life Insurance policy, in which recovery is contested upon the ground of fraud practiced by the insured in procuring reinstatement, following lapse of prior insurance.

A jury trial was waived and the issues have been submitted pursuant to a stipulation from which the following are quoted:

"III. That John Joseph Ronayne, hereinafter referred to as the insured, while in the military service, applied for and was granted, effective November 1, 1942, a policy of National Service Life Insurance * * * in which policies he named Joseph Thomas Ronayne, described as brother, as principal beneficiary, and Raymond Ronayne, described as brother as contingent beneficiary, and on which policies premiums were paid by allotment from the insured's service pay through November 30, 1945, and that.

said insurance lapsed for failure to pay the premium due December 1, 1945.

"IV. That the insured entered into active service on April 22, 1942 and was honorably discharged on November 3, 1945.

"V. That while the insured was in the service, his medical records indicate that he was treated for a epigastric distress condition on June 25, 1945, June 26, 1945, July 20, 1945, and on September 12, 1945. He was admitted to the 25th General Hospital in Belgium for a G. I. Series, where he remained under observation from September 13, 1945 to September 22, 1945, with reports showing an intermittent history of the condition for the past eighteen months. After the period of observation and study in September 1945, the examining physician diagnosed that the veteran's principal difficulty was an anxiety state which he believed had been alleviated. At the time of his separation from the service, his army medical examination given in conjunction with his separation, reveals a history of peptic ulcer, with first attack in 1944.

"VI. That immediately following his discharge from the service, the insured applied to the Veterans Administration for disability compensation, based upon his gastrointestinal condition of a peptic ulcer. This claim was not allowed and insured reapplied for disability compensation on the same grounds, and his medical file contains following medical reports:

"a. Letter of Dr. Charles Radetsky, dated October 5, 1946, indicating that insured was treated by him for gastric distress and that X Rays revealed a pyloric ulcer with retention, and condition was chronic and subject to exacerbations.

"b. An affidavit of Dr. Charles Radetsky, dated December 1, 1947, showing that insured was treated for pyloric ulcer from December 17, 1945 to November 29, 1947. Pyloric ulcer was confirmed by X Ray.

"c. A report of a G. I. Series done by Dr. Henry M. Weiselberg, dated February 14, 1948, reveals that the insured had a chronic pyloric ulcer.

"d. A report of a G. I. Series done by the Veterans Administration, at their New York Regional Office, dated April 28, 1948, reveals a Juxta pyloric ulcer with secondary pyloric obstruction.

"VIII. That on July 6, 1948, the insured executed an application for the reinstatement and conversion of National Service Life Insurance in the sum of $5,000, at the New York City Office of the Veterans Administration, wherein the insured, among other things represented that he was then, on July 6, 1948 in as good health as he was on the due date of the first premium in default, December 1, 1945; that he had not been ill, suffered, or contracted any disease, injury, or infirmity, or been prevented by reason of ill health from attending to his usual occupation, or consulted a physician or other practitioner for medical care or treatment at home, hospital, or elsewhere, in regard to his health since the lapse of the insurance involved in this action; that he had applied for disability compensation and gave his claim number, to wit: 731128.

"IX. That said application for reinstatement was marked 'Acceptable' on August 6, 1948, signed A. K. Coughlin, and thereafter the within contract of insurance, Policy No. V 203 32 50 was issued, effective July 1, 1948, and was in force and effect on date of insured's death, except for defendant's contention of fraud in the application for reinstatement.

"X. That on September 20, 1948, the insured was admitted to Halloran Veterans Administration Hospital where a partial gastrectomy was performed on October 8, 1948. Insured was released and treated as an out patient until he died on March 13, 1949, cause of death: nephrosis, uremia following laparotomy and repair of perforation of duedenal stump.

"XI. That subsequent to the insured's death, the plaintiff filed claims with the Veterans Administration for the death

benefits under the policy, and that said claim was finally denied by the Veterans Administration upon the basis of a decision of the Board of Appeals, dated March 15, 1950."

Referring to paragraph VIII above, it is found that as part of the application for reinstatement of the policy in suit, the following questions were asked and answered as indicated:

"Q8. Are you now in as good health as you were on the due date of the first premium in default? A. Yes.

"Q9. Have you been ill, or suffered or contracted any disease, injury, or infirmity or been prevented by reason thereof from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health, since lapse of this insurance? A. No.

"Q10. Have you ever applied for compensation, retirement pay, pension, waiver of life insurance premiums or total disability income benefits? (if 'Yes' give claim number below) A. Yes C–No. 7311328."

It is found that as to No. 8, the insured expressed what was essentially an opinion, as to which he may have been honestly mistaken. No fraud can be predicated of his answer.

■ It is found as to No. 9 that his answer was untrue as to his not having consulted a physician, surgeon, or other practitioner for medical advice or treatment, etc., and that he knew it to be false, and intended that the Government should rely upon it; that so much of the answer was factually material, and was made with intent to deceive; and that in reliance upon the misrepresentation the Government issued the policy in suit.

It is found further that as to the answer to number 10, the foregoing answer to question 9 did not become true by reference to C–No. 7311328. Nor was that reference effectual to incorporate into the false portion of the answer to No. 9 the true facts concerning the subject matter thereof.

Comment

The bases for the foregoing finding concerning the answer to question 9 are found in the records of the Veteran's Administration received in evidence as plaintiff's exhibits, namely: Plaintiff's Exhibit 5, being letter dated October 5, 1946 by Dr. Charles H. Radetsky reading: "To whom it may concern: John J. Ronayne was treated and x-rayed here 4–27–46 for gastric distress. X-Rays revealed a pyloric ulcer with retention. This condition is chronic, and subject to exacerbations. This condition definitely limits his employability, and earning capacity. Very sincerely Charles H. Radetsky M.D."

Plaintiff's exhibit 6, an affidavit by the same doctor verified Dec. 1, 1947 which recites that he had attended the decedent from Dec. 17, 1945 to Nov. 29, 1947 and sets forth the clinical details of the conditions involved.

That affidavit bears the notation of C 7,311,328 being the number of the claim for disability compensation, which on reconsideration was granted under date of July 29, 1948 (Plaintiff's Exhibit 9); the rating sheet as to disability reads in part:

10% from 11/4/45 to 3/31/46
10% " 4/1/46 to 6/16/47
40% " 6/17/47.

Thus when the application for reinstatement of the policy in suit was made on July 6, 1948, the insured had sought a rating of 40% disability resulting from "peptic ulcer with secondary pyloric obstruction."

That the decedent must have been aware of his condition is the irresistible inference to be drawn from Plaintiff's Exhibit 7, a communication dated February 14, 1948 signed by Hyman M. Weiselberg, M.D., which bears the same file number as has been stated.

Since the lapse in the original insurance is stipulated to have dated from December 1, 1945, the representations

made in the application for reinstatement above quoted on July 8, 1948 in the answer to question 9 cannot be deemed to have been either honestly mistaken, or the result of confusion caused by any ambiguity in form, such as that suggested in United States v. Thompson, 93 U.S.App.D.C. 231, 210 F.2d 724, at page 726.

There the court referred to the veteran as "a laborer without much education." Here the opinion of the Board of Veteran Appeals dated March 1, 1950 denying this claim, states that this veteran was "employed by an insurance company."

True, that decision was received in evidence over the plaintiff's objection, and has been read by this court but not deemed to be anything more than an official record tending to substantiate the allegation of paragraph VI of the complaint that a disagreement exists between the parties to this case.

In the absence of testimony to the contrary, the quoted statement as to the occupation of the decedent is accepted, and it clearly supports the inference that therefore he would have been peculiarly aware of the legal importance of the representations embraced in question 9, and of the sheer necessity for giving a truthful answer thereto. This means that the election to the contrary must have been deliberate and with fraudulent purpose and intent.

This is not to say that the standard of truth fluctuates with a man's calling, but that in seeking to discern his inner purpose, the court may ascribe a more acute understanding of the necessity for complete disclosure to one man than to another, depending upon what is revealed concerning his probable perceptive faculties.

In seeking to avoid the import of the evidence in this case, the plaintiff urges:

1. That United States v. Thompson, 93 U.S.App.D.C. 231, 210 F.2d 724 should be followed. The case is factually distinguishable in that (a) this veteran had received treatment from a private physician as has been shown, and hence could not have rested under the supposed misapprehension imputed to him by the court's opinion at page 726. (b) Nor was this decedent "a laborer without much education."

Nor did the same court find the Thompson case an impediment to a decision to the contrary effect in United States v. Kiefer, 97 U.S.App.D.C. 101, 228 F.2d 448, 449, certiorari denied 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815.

2. That the answer to question 10 containing a reference to his claim for disability benefits and compensation put the Government on notice of all that has been discussed above on that subject " * * * and if need be, to question the applicant for further information about his claim." In that connection, reliance is had upon the Thompson case, and United States v. Kelley, 9 Cir., 136 F.2d 823.

This entire subject is so carefully considered in the Kiefer case as to effectually dispose of the argument.

The discussion confines the Kelley case to the exact facts before that court, which were by no means parallel to those present in this record.

The plaintiff's argument above quoted assumes that the application for reinstatement should have been tested for truth in the light of the reference to the claim for benefits; in other words, that the Government was not justified in relying upon the veracity of the applicant (as to which see Vet.Ad.Reg. 3424, Defendant's brief, p. 4), but should have conducted an investigation to ascertain if the answer to question 9 could be shown to be untrue. If there is authority for such a requirement, it has not been submitted to the court.

A helpful discussion of this general subject in a similar case is to be found in McDaniel v. United States, 5 Cir., 196 F.2d 291, wherein a judgment was sustained denying recovery on the ground of fraud. Other cases which have been consulted are: Raives v. Raives, 2 Cir.,

54 F.2d 267; United States v. Depew, 10 Cir., 100 F.2d 725.

■ 3. Finally it is argued that even if a reinstatement of insurance had been declined (meaning perhaps if the untrue nature of the answer to question 9 had been discovered) issuance of the policy would have been required by reason of the provisions of Tit. 38 U.S.C.A. § 802 (c) (2), namely that portion of the cited section which reads:

"* * * In any case in which application for life or disability insurance or for reinstatement of such insurance is made prior to January 1, 1950, the administrator shall not deny, for the purposes of this section or sections 803–805 and 806–823 of this title, that the applicant is in good health because of any disability or disabilities, less than total in degree, resulting from or aggravated by such active service. * *"

Since the Administrator did not deny etc., within the quoted provision, no issue has here arisen for adjudication in connection therewith.

If the argument is intended to suggest that Plaintiff's Exhibit 10, the application for reinstatement of insurance, was an idle thing, and need not have contained the questions and answers which have been quoted; and that by some automatic process the reinstatement would have been compelled, it seems obvious that the complaint would have been cast in that guise, and the case could have so proceeded to trial. Since nothing of that nature has taken place, the contention is deemed to be an alternative suggestion that the untrue nature of the answer to question 9 should be considered as a mere unimportant incident and therefore to be disregarded. If such is indeed the purpose, it is legally unavailing. Cf. Jones v. United States, 5 Cir., 106 F.2d 888 at page 890.

It results from all of the foregoing, that judgment is directed for the defendant upon the merits.