UNITED STATES of America, Appellant,

v.

Shirley N. NERO, Appellee.

No. 158, Docket 24157.

United States Court of Appeals Second Circuit.

Argued April 12, 1957.

Decided July 30, 1957.

George Cochran Doub, Asst. U. S. Atty., Paul W. Williams, U. S. Atty., S. D. N. Y., Melvin Richter, William W. Ross, Attys., Dept. of Justice, Washington, D. C., for appellant.

Hugh A. Lavery, Ossining, Arthur Polier, New York City, for appellee.

Before MEDINA and WATERMAN, Circuit Judges, and LEIBELL, District Judge.

WATERMAN, Circuit Judge.

This action was brought pursuant to 38 U.S.C.A. § 817 by the widow and beneficiary of a deceased veteran to recover the proceeds of a National Service Life Insurance policy issued in the name of her husband, John J. Nero, in the amount of $3,000. The Government defended pursuant to 38 U.S.C.A. § 802(w)[1] on the ground that the policy sued upon, a reinstatement under 38 U.S.C.A. § 802 (y) of a lapsed policy, was void, the reinstatement having been obtained by fraud. The District Court held that the policy could not be avoided for fraud because the veteran was entitled to reinstatement as a matter of law under 38 U.S.C.A. § 802(c) (2).

The facts, most of which were stipulated, are not in dispute. Nero entered military service in June, 1942 and was issued a $5,000 National Service Life Insurance policy, effective August 1, 1942, designating his wife as beneficiary. Premiums were paid on this term insurance policy until March 1, 1943, when it was permitted to lapse. Nero was discharged from the service on March 4, 1945, as unfit for military service because of diabetes mellitus. Later that year, he applied for and was granted disability compensation based upon his diabetic condition. On January 27, 1947, he timely applied for reinstatement of $3,000 of the principal of his lapsed term insurance and for conversion of this insurance to a Thirty Payment Life policy. In his application for reinstatement, submitted on the prescribed Veterans' Administration form, Nero stated that he was at that time in as good health as he was when the policy lapsed, and that he had neither been ill nor consulted a physician since that date. He did, however, answer in the affirmative the question, "Have you applied for disability compensation, retirement pay or pensions?" and indicated the claim number which had been assigned to him.[2]

---

1. "(w) Subject to the provisions of section 812 of this title, all contracts or policies of insurance before or after August 1, 1946 issued, reinstated, or converted shall be incontestable from the date of issue, reinstatement, or conversion except for fraud, nonpayment of premium, or on the ground that the applicant was not a member of the military or naval forces of the United States."

2. The form Nero filled out contained the following questions and answers:

I, the undersigned do hereby apply for reinstatement of my National Service Term Insurance in the amount stated above, now lapsed for non-payment of premium within grace period of 31 days from the due date. As a condition to the reinstatement of this insurance, I do certify that the answers to the following questions are complete and true, to the best of my knowledge and belief:

1. Are you in as good health as you were on the due date of the first premium in default?

*Yes.*

2. Have you been ill, or suffered or contracted any disease, injury or infirmity, or been prevented by reason of ill health from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital or elsewhere in regard to your health since lapse of this insurance? (Answer yes or no.)

*No.*

(If answer is yes, give all dates and full particulars, including the name and address of practitioner and attach to this application a certified certificate of prac-

The applications for reinstatement and conversion were accepted by the Veterans' Administration and Nero continued to pay premiums until his death in September, 1951, the cause of which was coronary thrombosis. Diabetes was found to be a contributing factor to the condition which caused his death.

Since it is not disputed that the statements of Nero relating to his health were untrue, the sole questions which were before the trial court were whether the policy was contestable on the ground of fraud, and if it was, whether Nero was guilty of fraud in obtaining the reinstatement. By answering the former question in the negative, the court obviated the need for deciding the second.

█ Under the statute, 38 U.S.C.A. § 801 et seq., and the applicable regulations, the holder of a lapsed policy was entitled to reinstatement within the term upon proof that his health had not deteriorated since the date when the policy had lapsed.[3] Alternatively, if the health of the policyholder had deteriorated during this period, he also was entitled to reinstatement if his disability, less than total in degree, resulted from or was aggravated by active military service.[4] The pertinent sections of the statute clearly indicated that the determination of eligibility for reinstatement under either alternative was to be made by the Administrator of Veterans' Affairs. Thus § 802(y), authorizing reinstatement if the applicant was in good health, provided as a condition that there be "evidence satisfactory to the Administrator * * *" (see footnote 3); and § 802(c) (2) which granted an exception for "disabilities * * * resulting from or aggravated by such active service" stated that "the Administrator shall not deny * * * that the applicant is in good health" (see footnote 4) when the change in his physical condition was attributable to those causes. Moreover, 38 U.S.C.A. § 808 provided that "The Administrator * * * shall decide all questions arising hereunder."

█ The Administrator determined that Nero was eligible for reinstatement under § 802(y), and since the Administrator has never taken any action with respect to whether Nero was entitled to reinstatement under § 802(c) (2), the decision of the trial court that reinstatement was mandatory under § 802(c) (2) was error. Scott v. United States, 5 Cir., 1951, 189 F.2d 863. An application for one type of reinstatement cannot be treated by the District Court as an application for another type of reinstatement. Cf. United States v. Cooper, 6 Cir., 1953, 200 F.2d 954; Jones v. United States, 5 Cir., 1939, 106 F.2d 888.

---

titioner or head of hospital where treated.)

3. Have you applied for disability compensation, retirement pay or pensions? (Answer yes or no.)
Yes.
Claim No. C-4 784 880.

3. Section 802(y) provided:
(y) Reinstatement of lapsed policies.
"(1) Any level premium term insurance which has lapsed may be reinstated within the term upon written application, payment of two monthly premiums, and evidence satisfactory to the Administrator that the applicant, subject to the provisions of the second sentence of subsection (c) (2) of this section, is in good health." Repealed, Feb. 21, 1947, 61 Stat. 6.

4. Section 802(c) (2), referred to in 802 (y), provides that:

" * * * any individual who has had active service between October 8, 1940, and September 2, 1945, both dates inclusive, shall be granted such insurance upon application therefor in writing and upon payment or authorization for deduction of premiums and evidence satisfactory to the Administrator showing such person to be in good health at the time of such application. In any case in which application for life or disability insurance or for reinstatement of such insurance is made prior to January 1, 1950, the Administrator shall not deny, for the purposes of this section or sections 803–805 and 806–823 of this title, that the applicant is in good health because of any disability or disabilities, less than total in degree, resulting from or aggravated by such active service."

Because the District Court erroneously ruled that reinstatement under § 802 (c) (2) was required as a matter of law, it did not determine whether the defense of fraud had been established by the Government. Therefore, we remand the case for a new trial. Upon the second trial, this issue will be the crucial one, and it is not inappropriate that we state the controlling principles relative to that issue. Successful defense upon the ground of fraud requires that there be proof of "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with intent to deceive (5) with action taken in reliance upon the representation." Pence v. United States, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083, 86 L.Ed. 1510. In the present case, the existence of the first three elements appears to be establishable beyond dispute. The only issues in doubt are whether the Government can establish the latter two requirements.

■■ In the absence of countervailing evidence, the intent to deceive may be presumed from the fact that the applicant knowingly made false representations. Pence v. United States, supra. The appellee contends, however, that Nero's affirmative answer to the third question in the application, together with his disclosure of the claim number of his compensation docket, is sufficient as a matter of law to establish that Nero had no such intent. The authorities do not sustain this contention. United States v. Kiefer, 1955, 97 U.S.App.D.C. 101, 228 F.2d 448; United States v. Thompson, 1953, 93 U.S.App.D.C. 231, 210 F.2d 724; McDaniel v. United States, 5 Cir., 1952, 196 F.2d 291. In each of these cases, an affirmative answer to the third question and a similar disclosure of the claim number were treated as evidence from which the trier of fact might conclude that deceit was not intended, the infer-

ence to be drawn therefrom depending upon the particular circumstances of each case. Thus, in United States v. Thompson, supra, the Court held that the answers sustained a finding of the trial judge that intent to deceive had not been established; while in McDaniels v. United States, supra, the Court refused to disturb a judgment for the Government even though the third question had been answered in the affirmative, the claim number had been disclosed, and no other evidence of intent appeared on the record. Upon remand the trial court will have to determine, on the basis of the application and any other evidence which the parties may introduce as bearing upon this issue, whether the Government has established that Nero intended to deceive the Veterans' Administration by his answers to the questions on the application.

■ The appellee also contends that the Administrator is chargeable with knowledge of the contents of records in his possession when the existence of those records is called to his attention. Nero's application for reinstatement showed on its face that he had applied for veteran's benefits and gave the claim number assigned to his application. Therefore the appellee argues, the personnel who handled the reinstatement application could have discovered which of these benefits Nero had applied for, and on what basis, and could have discovered that the representations made in questions 1 and 2 were false.[5] In view of this, it is argued, the Administrator could not, as a matter of law, have relied upon the answers contained in the application. While the opinion of the Ninth Circuit in United States v. Kelley, 9 Cir., 1943, 136 F.2d 823, contains language which tends to support this argument, it has been rejected in the only cases in which the identical issue has been raised by the record.

5. The first two monthly premium payments after the policy had been reinstated were made by Nero. Thereafter, the amount of the premium was deducted from his disability compensation. Since the existence of the fraud is to be determined under the present pleadings as of the date of the application, we deem the fact that subsequent premiums were so paid to be of no relevance to the issues presented here.

United States v. Kiefer, supra; Mc-Daniel v. United States, supra. We believe that the reasoning of the court in Kiefer, with the exception of the equitable considerations relied upon, compels a result contrary to that contended for by the appellee. As pointed out in Kiefer, in United States v. Kelley, supra, there was evidence from which the jury could have found the Veterans' Administration personnel who handled the application for reinstatement had actual knowledge of the physical condition of the applicant. While no such evidence presently appears in this case, it may be possible for the appellee to introduce new evidence at the second trial from which it can be inferred that the insurance department of the Veterans' Administration had knowledge of the contents of Nero's compensation record. In Kelley, for example, the court stressed the fact that there were notations on the application which indicated that insurance department personnel had actual knowledge of the contents of the insured's compensation record. Testimony of department procedure at the time of the application also will be relevant to a determination of whether the personnel who approved the reinstatement had knowledge of the contents of Nero's compensation record. At the first trial, there was testimony by a Veterans' Administration organization and methods examiner that the processing of applications was governed by mimeographed instructions which were distributed to department personnel. These instructions, if available, would provide further evidence from which knowledge, or lack of knowledge, might be inferred.

Beyond this discussion of the relevance of evidence that we apprehend may be offered at trial, we do not, of course, express any opinion as to the probative value to be attached to any particular item which may be introduced. Such a determination is, of course, for the trier of fact.

The judgment below is reversed and the case remanded for a new trial.